## GRIMMETT AS GUARD. &C. VS. WITHERINGTON ET AL.

The domicil of the father is in legal contemplation, the domicil of his minor children.

Where a father was domiciled, and died in Arkansas, and a guardian was here appointed for his minor children, who by law was entitled to the care and custody of them, they cannot legally change their domicil, so as to divest their guardian of the care and custody of them.

And if such minors remove to another State, and a foreign guardian is there appointed for them, such foreign guardian, without proof that the minors were legally domiciled in such State, cannot recover their property from the domestic guardian, nor their distributive share of their father's estate from his administrators.

But where minors are legally domiciled in a foreign State and a guardian is duly appointed for them there, the Probate Court of this State would have the power, under the act of 12th January, 1853, to order an administrator, having in his hands their distributive share of an estate, to pay the same over to the guardian.

*Appeal from the Circuit Court of Union County.*

Hon. SHELTON WATSON, Circuit Judge.

HARDY & CARLETON, for the appellants.

LYON, for the appellees.

Mr. Chief Justice ENGLISH delivered the opinion of the Court.

In October, 1853, Maclin Grimmett filed a petition in the Probate Court of Union county, representing that he had been appointed by the County Court of Jasper county, in the State of Texas, guardian of Newton S., Alvin M., Lucetta C., and Henrietta R. Witherington, minor heirs of James Witherington, deceased, who died intestate in said county of Union. That he, the petitioner, was the husband of Catherine L., daughter of said James Witherington.

25B

That Augustus L. Witherington, and William A. Ring, were the administrators of said James Witherington, deceased. That the remaining heirs of said James Witherington were four married daughters, whose names, and the names of whose husbands are stated. That several of the heirs had received from their deceased father, certain sums by way of advancement, which are set forth. That the debts of the deceased had beed paid, and that upon the last settlement of the administrators, with said Probate Court, there remained a balance in their hands of $6047 35.

Prayer, that the court order the administrators to pay over to the petitioner, the amount due him as such guardian; and also, the sum due to him in right of his wife, Catherine L.

The petitioner accompanied his petition with a duly certified transcript of the record of the County Court of Jasper county, in the State of Texas, showing his appointment as guardian of said minor heirs.

From this transcript it appears, that on the 30th day of August, 1852, Grimmett presented his petition to said County Court of Jasper county, Texas, praying to be appointed guardian of the persons and estates of Alvin M., Lucetta C., and Henrietta R. Witherington, minors and heirs of James Witherington, deceased; and it appearing to the satisfaction of the court, that said minors were under the age of fourteen years, and legal notice of said application having been given, and there being no exceptions to the petition, it was ordered by the court that Grimmett be appointed guardian of the persons and estates of said minors, on his entering into bond, with good and sufficient securities, in the sum of six thousand dollars, for the faithful performance of his duties, &c. Whereupon, Grimmett executed the bond required, which was approved; he also made the affidavit required, and the court ordered letters of guardianship to be issued to him.

It further appears from the transcript, that on the same day, Newton S. Witherington, a minor, over the age of fourteen years, appeared before said County Court of Jasper county, and made

choice of Grimmett as guardian of his person and estate; and upon Grimmett entering into bond, and making the affidavit required, he was appointed guardian of said Newton S., and letters ordered to be issued to him accordingly.

On the hearing of the cause in the Probate Court of Union county, the court rendered the following decree: "Came Maclin Grimmett, in the right, and as guardian, &c., and presented his petition, praying an order of distribution of said estate, and an order authorizing him to remove the portion of said minor heirs, &c., that should be adjudged to them in said distribution, to the county of Jasper, in the State of Texas, and thereupon filed and exhibited in open court a regularly certified transcript of his appointment and qualification as guardian of said minors, in the county and State aforesaid, where said minor heirs reside: Whereupon, John C. Ring, as domestic guardian of said minors, appeared in open court, and consented that an order and decree of this court should be entered according to the prayer of petitioner; but said Augustus L. Witherington, one of said administrators, objected to the right and authority of petitioner to sue as foreign guardian of said minor heirs, because the said John C. Ring is their regularly appointed guardian in this State; and, after argument of counsel, the court finds that petitioner's right and authority to prosecute this suit in right of his wife, and as foreign guardian of Newton S. Witherington, is sufficient: and it appearing, that under a former order of this court, the slaves belonging to said estate, were ordered to be sold for the purpose of distribution, &c., &c., and that the proceeds of sale, &c., amount to the sum of," &c., &c.

The decree then proceeds to state the sum to be distributed, and the amount ascertained by the admissions of the parties to have been received by the married daughters, by way of advancement, and orders the administrators to pay over, for the benefit of each distributee, the share of the fund ascertained to be due to him or her. And, particularly, that they pay over to Grimmett, in right of his wife, the sum allotted to her; and, also,

that they pay over to him, as foreign guardian of Newton S. Witherington, the portion of the fund due to him, and that he have privilege, as such guardian, to remove the same to Jasper county, Texas.

But it was further decreed, that the administrators pay over to John C. Ring, as domestic guardian of the minor heirs, Lucetta C., Alvin M., and Henrietta R. Witherington, the portions of the fund distributed to them; and Grimmett excepted to so much of the decree, as withheld from him, as such foreign guardian, the shares of these three minors, and took a bill of excep tions, setting out the evidence.

It does not appear, from the bill of exceptions, that any evidence was introduced upon the hearing, but the transcript showing the appointment of Grimmett, as guardian of said minor heirs in Texas; the account current of the administrators showing the balance in their hands, and the proceedings for the sale of the slaves for distribution; together with the admissions of the parties in reference to the sums received by the heirs, to whom advancements had been made.

Grimmett appealed from the decree of the Probate Court, to the Circuit Court of Union county; where, on inspection of the transcript, the decree was affirmed, and he appealed to this court.

It is insisted for the appellant, that under the act of 12th January, 1853, (*Pamph. acts* 1852, 1853, *p.* 206,) he had the right to recover and remove to Texas, the money due his wards from the estate of their father, and that the Probate Court should have so decreed. On the other hand, it is contended for the appellees, that the domestic guardian had the preference to receive and retain the money in his hands.

It may be fairly inferred from the record, that James Witherington was domiciled, and died in Union county, Arkansas; that the Probate Court of said county granted letters of administration to two of the appellees, upon his estate, and appointed the other appellee, Ring, guardian of his minor children, whom

it may be legally supposed were also, at the time, domiciled in Union county ; the domicil of the father being, as a general rule, the domicil of his minor children, according to law. How, or by what authority, these minors got into Texas, does not appear from the record.

By the common law, a foreign guardian can exercise, as such, no rights, or powers, or functions over the property, personal or real, of his ward, which is situated in a different State or country from that in which he has obtained his letters of guardianship. But he must obtain new letters of guardianship from the local tribunals authorized to grant the same, before he can exercise any rights, powers, or functions over the same. *Story's Confl. L.*, sec. 499, 504, a 2d *Ed.* ; *Kraft vs. Wickey*, 4 *Gill & John.* 332.

A person appointed guardian of an infant in one State, is not, by the common law, entitled to recover from an executor, or administrator in another State, a legacy or distributive portion left his ward there, without giving security, and obtaining letters from the proper tribunal, where the legacy or portion is situated. *Morrell vs. Dickey*, 1 *John Ch. Rep.* 153 ; 4 *Cowen's Rep.*, note, *p.* 529.

In *Kraft vs. Wickey, ubi sup., Marck* died in Baltimore, leaving an estate, a wife, and minor children. The surviving mother afterwards removed the minors to Pennsylvania, where a guardian was appointed for some of them, who applied to the Orphans Court of Baltimore, to revoke the letters of the domestic guardian, which was done, and on appeal to the court of appeals, the decree was reversed ; the court holding, that guardians, like executors and administrators, could only sue in the courts of the country from which they derived their power. That they have no extra-territorial authority as guardians. That the domestic guardian having the property was bound to pay for the maintenance and education of the ward. And the foreign guardian having the custody of the ward, could enforce the fulfilment of this requisition, by an application to the proper tribunal ; and

that, in such case, the domestic guardian would be regarded as a trustee, &c.

In this State, some of the inconveniences arising from these principles of the common law, have been remedied by legislation.

Thus, by *sec.* 1, *chap.*, 7, *Digest*, foreign guardians (appointed in any of the States, territories, or districts of the United States,) are empowered to sue as such in our courts.

And by the act of 12th January, 1853, entitled *"An act to authorize and allow foreign guardians to remove from this State the property of their wards."* (*Pamph. acts,* 1852, 1853, *p.* 203, 204,) it is provided: "That hereafter, it shall be lawful for guardians, appointed in any of the States, territories or districts of the United States, whose wards may have any property within this State, on bringing evidence of his or her appointment, and qualification as such guardian, duly certified and authenticated according to law, to apply to the Probate Court of the county in which such property may be situate, for an order authorizing such guardian to remove said property from this State, to the State, territory, or district, in which such guardian shall have been appointed and qualified as such; and such Probate Court, on being satisfied of the authority of such guardian, shall enter up an order authorizing the removal of such property by such guardian."

Had it been shown to the Probate Court of Union county, that the minors in question were legally domiciled in Texas, and a guardian duly appointed for them there, with sufficient bond and security, the court would doubtless have had the power, and it would have been its duty, under the above statute, to order the administrators to pay over to such guardian the portions of their intestate's estate due to his wards. Or if the property had been in the hands of a domestic guardian who was not legally entitled to the custody of the persons of the minors, the court perhaps would be authorized, on proper application, to order him to turn over to the guardian of their domicil entitled to such custody and care of their persons, any personal effects in the hands of the do-

mestic guardian belonging to them, in order that it might be used by the guardian of their domicil, in their maintenance and education.

But, in this case, we have seen that the father of the minors was domiciled and died in Arkansas; that a guardian was here appointed for his minor children; who, by law, was entitled to the care and custody of them, (there being no proof that their mother survived the father), and that the domicil of their father was, in legal contemplation, the domicil of his minor children.

It does not appear from the record, that any proof was made before the Probate Court, that the domicil of the three minors in question had been legally, or for any good purpose transferred to Texas, or by what authority, or at whose instance they got into Texas.

It is not shown that their mother was living, and removed them to Texas, or that their guardian, desiring them to have the care and attention of their sister, the wife of Grimmett, removed them there, or that any relation, by the approbation of their domestic guardian, transferred their domicil.

They being minors, and it seems of tender years, could not legally change their domicil, so as to divest their domestic guardian of his custody and care of them. *Story's Confl. of Laws*, (2d Ed.) sec. 505, a. b. c. and note, at p. 17; *citing Patinger vs. Wightman*, 3 *Meriv. Rep.* 79, 80.

If minors were permitted to abandon their domestic guardians, and go to other States, or if others, without proper authority, were allowed to draw them away, and become their guardians, many evil consequences to them and their estates might follow.

It may be regarded as a favorable circumstance to the claims of the foreign guardian in this case, that the domestic guardian interposed no objection to the making of the order asked by him of the Probate Court; yet, objection was made by one of the administrators, and no matter by whom the objection was interposed, it was the duty of the court to render the proper decree in the case; and in the absence of any showing in the record that

sufficient evidence was introduced to warrant and require the court to make the order sought by Grimmett, the decree must be presumed to have been proper, and the Circuit Court was not authorized to set it aside.

Such decree, however, would not be a bar to a new application sustained by sufficient evidence. The judgment of the Circuit Court is affirmed.