## WHITE *v.* DOTTER.

Opinion delivered November 19, 1904.

1. ADOPTED CHILD—DESCENT AND DISTRIBUTION OF PROPERTY.—Adoptive parents do not inherit from the adopted child. (Page 136.)

2. MISTAKE OF FACT—EFFECT.—Where lands and chattels were voluntarily conveyed under the mistaken belief that the grantee was the grantor's adopted child, equity will not grant relief, as the mistake of fact as to the status of the child created no difference as to the devolution of the property in case of the grantee's death. (Page 137.)

3. MISTAKE OF LAW AND FACT—WHEN NOT RELIEVED AGAINST.—Where goods and chattels were voluntarily conveyed, out of love and affection to one mistakenly supposed to be the grantor's adopted child, under the belief that the grantor would inherit from the grantee as from a natural child, equity will not grant relief where the whole evidence convinces the court that the question of inheritance from the grantee was merely incidental, and not the determining ground of the transaction. (Page 137.)

Appeal from Pulaski Chancery Court.

THOMAS B. MARTIN, Chancellor.

Reversed.

STATEMENT BY THE COURT.

Finding the statement by the chancellor to be accurate (with one slight exception), and the facts so well digested, his statement is incorporated here as the statement of the court as far as it goes:

"Without giving the details of the analysis I have made of the pleadings and evidence in this cause, it is sufficient, for the purpose of a correct comprehension of the conclusion I have reached, to say that I find the facts to be that in the year 1850 John White landed from a flatboat on the Arkansas River, at Little Rock, accompanied by his wife and two children. A short time afterward the wife gave birth to a third child, whom the

parties named Charity, and died about a week afterwards, leaving the father, a man of but little means, to care for the two children. Charity was given by the natural mother, on her deathbed, to Mrs. Lewis, and she and her husband cared for her until the death of Mrs. Lewis, about seven months afterward, when Mr. Lewis gave the child to Marcus Dotter and his wife, the complainant, and the name of the child was changed from Charity White to Susan Caroline Dotter, as a compliment to Susan Lewis, the little one's first foster mother, and to Mrs. Dotter's sister, Caroline. The child's natural father took the two older children away from Arkansas, and nothing was heard of him or them for a period of more than a quarter of a century. In fact, there seems to have been no correspondence between the father and the child to the time of his death in the year 1896, a period of more than forty-five years, and there is no satisfactory evidence in the record that Charity, or Susan, as she was called after the plaintiff took her, or Mrs. Dotter, knew that John White, the father, was living at all. On the contrary, the record tends to show that he never wrote to his child, and Mrs. Dotter swears that she was informed and believed that he had gone back to Tennessee, and died before the child was given to her and her husband. He seems to have had little, if any, care for his child. The evidence in this suit, however, has revealed to Mrs. Dotter the fact that White returned to East Tennessee, married again, and became the father, by his second wife, of several children, who are parties defendant to this action, and complainants in the cross complaint filed herein. In 1854 Mr. Dotter made application to the General Assembly of this State seeking the passage of 'An act to change the name of Susan Caroline White to Susan Caroline Dotter, and to constitute her a lawful heir of Marcus Dotter and Rachael Dotter, his wife,' or, to employ the language of complainant in her deposition, 'An act adopting Susie.' The journals of the session show that the bill was introduced in the House of Representatives by Mr. Joseph Stillwell, of Pulaski County, on December 15, 1854; that it passed the House, was transmitted to the Senate, and there read twice; but they fail to show anything more of its history; and if it ever became a law, no evidence of it can now be found. Mr. Dotter during his life rested under the belief that the act had been passed. And Susie

having married Albert Stillwell, who seems to have been a shiftless, improvident husband, when Mr. Dotter made his will, prior to his death in 1875, he bequeathed by it all his property to his wife, who promised him to see that Susie was provided for during her life.

"Mrs. Stillwell had no children by Stillwell, and, after living with him some time, was divorced from him and married A. S. Wallace (in 1876), whose wife she was at the time of her death on the 17th day of January, 1890. Mrs. Dotter, who, by her husband's will, acquired property which became worth $35,000 or $40,000, on the 20th day of June, 1887, executed and delivered to Susie C. Wallace a deed, containing a covenant of general warranty, and reciting the consideration therefor as $1 paid and the natural love and affection which she bore to her, to the realty in the city of Little Rock, worth $3,000 or $3,500, involved in this litigation. In 1889 she deposited to the credit of Mrs. Wallace in the bank of W. B. Worthen & Company the sum of $1,000, and a few weeks before her death, in 1890, she deposited another $1,000 in the bank of Parker & Cates to the credit of Mrs. Wallace.

"Mrs. Wallace, or Mrs. Dotter for her, drew the interest only on the first sum as it accrued, and at her death the $2,000 was in the bank to her credit. The plaintiff, after the death of Mrs. Wallace, applied to the banks for the money, thinking that it belonged to her as the heir of Mrs. Wallace, but the banks declined to pay it to her, or any portion thereof, until she should procure letters of administration upon the estate of Mrs. Wallace. She procured the letters, and recovered the money, being at the time ignorant of the fact that the act of adoption had never been passed by the General Assembly, and resting in the belief that such a law had been enacted, and that under it and the statutes of descents and distributions in this State she would inherit the realty and money as the heir of Mrs. Wallace. About a year and two months after letters of administration had been issued to her, the plaintiff caused some investigation to be made, and probably not earlier than then, if then, became convinced of the fact that the act of adoption was never passed. She filed a settlement as administratrix [this is inaccurate as to time] in the probate court, in which she charges herself with the money, never having obtained possession of the realty from Mr. Wallace, and

credits herself with taxes paid on the land, with commissions due her as administratrix, and other costs, leaving a balance in her hands of $1,401.80. On April 24, 1891, the court entered an order confirming the settlement, and providing that the administratrix and sureties on her bond as such should be discharged from further liability when she should file 'the proper receipts for the balance in her hands as shown by said settlement.'

"On January 9, 1896, this suit was instituted against A. S. Wallace, the husband of the late Susie C., and the unknown heirs of the estate of Mrs. Wallace. The bill has been answered by the heirs, and cross bills filed by them, in which are set forth their respective claims of interest in the property, and their relationship to Mrs. Wallace, deceased.

"The material allegations of the complaint upon which the rights of the parties depend are, that Mrs. Dotter at the time she executed and delivered the deed to the realty, and when she deposited the money in bank to the credit of Mrs. Wallace was resting under the erroneous belief that the bill introduced into the General Assembly of 1854 to have the name of Susan C. White changed to Susan C. Dotter, and to constitute her a lawful heir to Marcus and Rachel Dotter, had become a law; and that, at the death of Mrs. Wallace without issue, plaintiff would inherit the property from her. The prayer of the plaintiff as amended is: *first,* that the court decree that the consideration for the execution of the deed to Mrs. Wallace and the deposits of money to her credit has failed, and on that account the legal title thereto be declared to be in the plaintiff, and all clouds thereon be removed from the title to the realty; or, *second,* that the defendants hold the legal title to the realty, and the administratrix to the personalty, in trust to the use of the plaintiff.

"The defendants deny plaintiff's right to any relief as a matter of law or equity, and plead the statutes of limitations of seven years and three years against her right of recovery. And in their cross complaints pray that the administratrix be decreed to pay them the money in her hands with interest, and for possession of the realty with damages for its detention."

In the foregoing statement the word "then," in the sentence beginning "she then filed a settlement as administratrix," etc., is

stricken out. Its insertion leaves the finding, of which the chancellor seemed doubtful, that this settlement was filed after learning that Susie had not been adopted. There is an inaccuracy in this statement, as the evidence shows that it was after this, and when Mrs. Dotter desired to have the money turned over to her, as the last act of the administration, that she attempted to get a copy of the act adopting Susie, and then learned for the first time that it had not passed.

In addition to the foregoing facts, the following throws light on the question. In quotations here given, the appellant's abstract is used instead of the transcript, as it abbreviates, and appellee's counsel compliments its accuracy.

Mrs. Dotter testified: "After I returned from Tennessee, I gave her a deed to the house for love and affection as her mother, expecting it to come back, if anything happened. I thought that I would die first; I had no idea that I would outlive her. If I had known at the time that there was no legal relation between myself and Susan, I would not have executed that deed in that form. I would have given it to her for her lifetime. I gave it to her with the understanding that the law was that she was my adopted child, with the relation existing between us of adopted child and parent." In regard to the money gift, she testified that there was no consideration for them except love and for the use of Susie. She described the scene at Mrs. Wallace's deathbed as follows: "She said, 'I am so sick.' I said, 'If you should die, what do you want done?' 'I want you to have all I got. You gave it to me, and I want you to have it; only I want you to give Mr. Wallace some, as he waited on me since I have been sick.'" On cross-examination Mrs. Dotter makes the following statements: "From the time I took her up to the time of her death, I loved her and treated her as I would if she had been born my child. Her adopted father, Marcus Dotter, loved her as his own daughter up to the time of his death. He died in January, 1875. Susan was not then married to anybody, and was living with me. She had then no property of her own. Marcus Dotter, who thought himself her adopted father, made no provision for her in his will, because she had been married to Stillwell, and he didn't want him to get anything of it. I was to take care of her. He wanted me to take care of her and make suitable

provision for her. I promised him to do that. It wasn't neces-
sary to promise to do that. I was willing to do it, because I
regarded her as my daughter. I never knew any better. When
the deed was written up, I thought so, he thought so, and all
thought so. When he died, I was 44 years old, and Susan was
25 years old. Mr. Dotter thought she would live longer than I
would. I was always sick a great deal all my married life. As
he believed that she would live longer than I would, and as he
knew she had no property, he had confidence in my providing for
her, and asked me to do so. He never asked me to make pro-
vision for her in the event of my death. He knew I would. I
told him I would when he made his will. When he made his
will, I told him I would take care of her, and would never see
her want for anything as long as I had anything myself." She
sold property for about $32,000 shortly before she deeded the
realty in controversy to Mrs. Wallace.

*Gray Carroll,* for appellants; *Dodge, Johnson & Pemberton,*
of counsel.

Adoption being unknown to the common law and existing
only by statutes, such statutes must be strictly construed.    17
Ore. 204. Such statutes are strictly construed against parties
claiming, under them, rights in contravention to the general laws
of inheritance founded on natural relationship. 101 Ill. 33; 81
Cal. 408; *Id.* 6 L. R. A. 594; 80 Cal. 216; 103 Ill. 229; 53 Ia.
148; 55 Ia. 341; 56 Ia. 578; 144 Mass. 441; 77 Mich. 351; 70
Mich. 297; 91 N. Car. 142; 35 Oh. St. 655; 87 Cal. 638; 53 Mo.
88; 67 Mo. 380; 51 Mo. 234; 84 Mo. 323; Suth. Stat. Const. §
400, p. 510; *Id.* § 139, p. 182. Adoptive parents do not inherit
from adopted children. 87 Ind. 590; 25 Oh. St. 451; 20 C. L. J.
343; 35 Oh. St. 655; 53 Wis. 514. The natural parents will
inherit the adopted child's estate, even though said estate came
from the adopted parents. 30 L. R. A. 263; *Id.* 95 Tenn. 605;
47 Ind. 335; 68 Mo. 482.

Upon the general rule as to relief in equity see: 2 Minor's
Inst. 624; 1 Beach, Mod. Eq. Jur. § § 41, 54; 1 Story, Eq.
§ § 150, 151; Kerr, Fr. & Mist. 408, 409. The cases in 40 Ark. 62
and 64 Ark. 160, cited in the opinion of the chancellor (Mart.
Ch. Dec. 87) do not sustain same. No consideration is necessary

to support an executed contract. 4 Minor's Inst. 31. Want or failure of consideration in such a case as the one at bar, unless coupled with circumstances of fraud, will not avoid a conveyance as between the parties. 2 Minor's Inst. 589, 590; 2 Washb. R. Prop. 652; 2 Lomax's Dig. 25, 382, 404; 1 Tuck. Comm. 230; 4 Minor's Inst. 16.

C. S. Collins, for appellees.

For opinion and authorities sustaining decree see Mart. Ch. Dec. 87. Mistakes as to passage and contents of private acts are provable as mistakes of fact. L. R. 2 H. L. 149; L. R. 6 H. L. 223; 13 Ark. 129. The mistake in respect to the passage of the special act was one of fact, and not of law. 13 Ark. 135; 24 Ark. 370; 49 Ark. 32; Kerr, Fr. & Mist. 406; 19 A. D. 508; 31 A. D. 382; 81 A. D. 564; 29 A. D. 407; 5 A. D. 62; 23 A. D. 447; 15 A. R. 162, 177; 42 A. D. 447; 78 A. D. 574; 45 A. D. 481; 94 A. D. 282; 45 A. D. 621; 49 A. D. 250. Under the circumstances of this case, appellees were entitled to the declaration of a resulting trust in their favor. 40 Ark. 66; 64 Ark. 160; Mart. Ch. Dec. 87, and cases cited.

HILL, C. J., (after stating the facts.) Mrs. Dotter was laboring under two mistakes, one of law and one of fact. The mistake of fact being the belief that the act changing Susan's name from White to Dotter, and constituting her a lawful heir of Marcus and Rachel Dotter, had actually passed, when in fact it had not. Under the circumstances, the court must treat these parties as if the act had passed, and the exact effect should be given it that was intended by Mr. and Mrs. Dotter, viz., that the child's name be changed to theirs, they given legal control of her, and she given the right to inherit from them. There was nothing in that act giving Mr. and Mrs. Dotter right to inherit from the adopted child. It may be safely assumed that, in desiring that act passed, neither of these adoptive parents ever contemplated a contingency arising in which they would inherit from this waif, who had come to them almost as flotsam cast up from the river. The law is settled that adoptive parents do not inherit from the adopted child. Rodgers on Domestic Relations,

§ 463. See the many authorities on this point collected in appellants' brief, and in the opinion of the chancellor. 1 Martin's Chancery Decisions, 87. Hence this mistake of fact in the status of the adopted child created no difference in the devolution of the property given her which passed to the next of kin, with or without the adoption having been legally made.

The other mistake was of law, and it was the belief which she says she entertained that she would inherit from an adopted child as from a natural one. This is the only mistake here shown having any effect, if it did.

Without going into a discussion of what mistakes of law will and what will not be relieved against, the court places its decision on this proposition, which is well settled in equity jurisprudence: "Mistake in matter of law or matter of fact, to be a ground for equitable relief, must be of a material nature, and must be the determining ground of the transaction. A man who seeks relief against mistake must be able to satisfy the court that his conduct has been determined by the mistake. Mistake in matters which are only incidental to, and are not of the essence of, a transaction, and without or in the absence of which it is reasonable to infer that the transaction would nevertheless have taken place, goes for nothing." Kerr on Fraud and Mistake, p. 408.

Mrs. Dotter loved this adopted child almost as if she were her own, and she promised her husband, when he made his will, that she would suitably provide for her. The husband likewise was tenderly attached to her, and would have provided in his will for her, but she then had a shiftless husband, and he thought it wiser to leave the property to Mrs. Dotter, in full confidence that she would make proper provision for her. The confidence was not misplaced. Soon after making a sale of property, realizing over $32,000 from it, she deeded a home, worth $3,000 or $4,000, to Mrs. Wallace, and followed that up shortly by two gifts of $1,000 each, which were invested in income-bearing securities. Mrs. Dotter was not in good health and much older than her adopted daughter, and did not expect to outlive her when she made the gifts.

It is not consonant to these facts to hold that Mrs. Dotter's belief that she would inherit from Susan was "the determining ground of the transaction." At one place in her testimony she says that, if she had not believed the relation existed, she would

have framed the deed so as to convey a life interest only. Doubtless, that was the way she looked at the events retrospectively; but her whole evidence convinces that the question of inheritance from Susan was incidental, and not of the essence of the transaction. Feeling that the time had come to comply with her promise to her dead husband, it is not consistent with her whole bearing to this adopted child to find that she would have hampered her gift of the home with a reversion to herself, or that she would have secured the return of the principal of the money gifts to herself, giving only the interest thereon, if she had understood that she could not inherit from the adopted child. Especially is this view not consistent with the facts when Mrs. Dotter says she did not expect to outlive Mrs. Wallace. It is naturally repugnant to Mrs. Dotter to see this property pass, contrary to the dying wishes of her daughter, from herself, who gave it, unto those who were aliens to her daughter in everything except blood. But the personnel of the next of kin, whether child or remote cousin, is not a consideration.

The whole case convinces the court that the mistake of the law as to inheriting from adopted children was not a determining factor in these gifts, and such a mistake would not have prevented the gifts being made, had it not occurred. Mrs. Dotter gave them freely, generously and without reserve or thought of them ultimately coming back to her.

The decree is reversed, and the cause remanded, with directions to enter a decree in conformity to this opinion.

The appellee Rachel J. Dotter having departed this life since the appeal, the decree in this cause will relate back and take effect from the date of the submission of this cause, November 10, 1902, under the rule in such cases.

WOOD, J., dissents.