## LANDRETH v. HENSON.

### Opinion delivered January 18, 1915.

1. GUARDIAN AND WARD—FOREIGN GUARDIAN—SALE IN ARKANSAS—VALID-ITY—CONFLICT OF LAWS.—Under Kirby's Digest, § 3793, which pro-vides that all probate sales of real estate, made pursuant to pro-ceedings not in substantial compliance with statutory provisions shall be voidable, a sale of a minor's property in Arkansas under order of a local probate court, would be void, if the appointment of the foreign guardian in another State was not legally made.

2. DOMICILE—PARENT AND CHILD—DECEASED FATHER.—The last domicile of a deceased father of an infant constitutes the legal domicile of the infant, and the domicile of the infant can not be changed or removed by his own act until he reaches his majority.

3. GUARDIAN AND WARD—FOREIGN GUARDIAN—LEGALITY OF APPOINTMENT —SALE OF WARD'S LAND.—A father died, having a minor son and some land, the latter situated in this State. The minor had removed with his mother to another State; held, the minor had acquired a domicile in that State so that a guardian could properly be ap-pointed for the minor in the foreign State, and that the authority of the probate court in that State to order a sale of the ward's property in this State, was valid.

4. GUARDIAN AND WARD—FOREIGN GUARDIAN— SALE — COMPLIANCE WITH STATUTE.—Where a foreign guardian of a nonresident ward seeks to sell property in this State belonging to the ward, under order of the probate court of the other State, under Kirby's Digest, § 3793, the sale to be valid must be in substantial compliance with the statutes of this State relative thereto.

5. GUARDIAN AND WARD—BOND—NONRESIDENT GUARDIAN—SALE OF WARD'S PROPERTY.—Under Kirby's Digest, § 3813, a nonresident guardian will not be authorized to sell the ward's land, in the county where it is located unless he offers to the court a copy of his bond, property authenticated. Held, the statute is substantially complied with, so as to render a sale valid, when the proof made of a nonresident guardian's bond made in another State, was a certificate to that effect, made by the judge of the court appointing him, and where the bond was filed.

6. APPEAL AND—ERROR—TRANSFER OF ACTION—HARMLESS ERROR.—Al-though an action is improperly transferred from law to equity, where the material facts are undisputed, and the decision of the chancellor is found to be correct, and the result could not have been otherwise at law, it will be held that there was no prejudicial error in transferring the same.

Appeal from Hot Spring Chancery Court; *Jethro P. Henderson*, Chancellor; affirmed.

*Jabez M. Smith* and *D. D. Glover,* for appellant.

1. The transfer to equity was improper because the questions involved were purely legal. 93 Ark. 376; 92 *Id.* 46; 100 *Id.* 399.

2. The public administrator of Pike County, Missouri, is not shown to have jurisdiction.. Mo. Stat. 1909, vol. 1, § 302; 115 Am. St. Rep. 472, 477; 198 Mo. 174.

3. The probate court of Hot Spring County had no jurisdiction. The law was not complied with and its orders are void on collateral attack. 70 Ark. 343. All the acts of the guardian are void. Black on Judg., 928-9; 47 Ark. 120; 1 Greenl. on Ev., § 548; 78 Ark. 246; 90 Ark. 35; 32 *Id.* 97-104; Kirby's Digest, § § 3781-2, 3813; 115 Am. St. Rep. 38. Our statute requires a copy of the record of the appointment of the guardian and of his bond duly authenticated. The selling of land by a foreign guardian is statutory, and the order must show affirmatively that the statutes have been complied with; no presumption is indulged. 64 Ark. 110; 103 *Id.* 450; 59 *Id.* 486-7; 74 *Id.* 86; 106 *Id.* 566.

4. The requirements of the statute can not be omitted or wholly disregarded. 89 Ark. 284, and cases *supra.*

5. The domicile of the father was the domicile of the minor. 16 Ark. 377; 29 *Id.* 280; 80 *Id.* 358. A minor can not waive his homestead right. Const. Ark., art. 9, § 6; 29 Ark. 633; 37 *Id.* 316; 47 *Id.* 445; 51 *Id.* 429; 53 *Id.* 402; 65 *Id.* 358.

*E. H. Vance, Jr.,* for appellee. *Albert W. Jernigan,* of counsel.

1. Davis was the legally appointed guardian. The Missouri court had jurisdiction. Kirby's Dig., § § 3810-3817. The statutes are merely declaratory of what at common law courts of equity could do.

2. It is true an infant's domicile is the last domicile of his father. 72 Ark. 299; 16 *Id.* 377; 29 *Id.* 280; 80 *Id.* 350; 77 Am. Dec. 534. The presumption is that the father consented that the care, custody and management

of the minor was given to his grandfather in Missouri. If not, then plaintiff's domicile was in Hot Spring County, Ark., although he was residing elsewhere. 80 Ark. 357. Then he was a non-resident minor of Arkansas. Pomeroy Eq. 1305-6. The jurisdictional facts are settled by the probate court and not open to collateral attack. 84 Ark. 34; 66 *Id.* 416; 70 *Id.* 88; 117 S. W. 628; 15 A. & Eng. Enc. 37; 78 Ark. 193; Kirby's Dig., § 3771; 80 Ark. 357; 84 *Id.* 35; Kirby's Dig., § 3793; Const. Ark., art. 7, § 34; 52 Ark. 341; 86 *Id.* 368; 89 *Id.* 288; 135 S. W. 821; 26 *Id.* 421. All the essential elements and requirements of the statutes were complied with. This is sufficient on collateral attack. 89 Ark. 284; 131 Am. St. 93; 26 Ark. 421; 44 Ark. 414; 51 *Id.* 338; 53 *Id.* 37; *Ib.* 224; 38 *Id.* 78.

3. The record being silent the presumption is that the court first inquired into all jurisdictional facts. 84 Ark. 34; 117 S. W. 628; 67 Am. Dig. 745; 67 Am. Dec. 693.

4. The advertisement was a substantial compliance with the law. 89 Ark. 289.

5. Want of jurisdiction must appear in the record. 51 Ark. 358; 53 *Id.* 37; 52 *Id.* 341.

6. The court had the right to order the sale for support, education and maintenance, even of a homestead. 65 Ark. 355; 54 *Id.* 480-4; 5 La. Ann. 180; 31 Ind. 444; 49 Mo. 116; 51 Wis. 487. See also in support of jurisdiction, 65 Mich. 362; 39 Neb. 483; 90 Ark. 170; 26 *Id.* 421; 89 *Id.* 289.

7. Mere irregularities are cured by confirmation. 84 Ark. 277; 81 *Id.* 172; 32 *Id.* 97; 66 *Id.* 367; 74 *Id.* 324; 51 *Id.* 338; 76 *Id.* 146; 118 S. W. 194; 75 Ark. 9; 33 L. R. A. (O. S.) 770; 86 Tenn. 32; 88 Me. 310; 9 Dana 526; 39 Neb. 843; 59 N. W. 522; 47 Am. St. 627.

McCULLOCH, C. J. This suit involves the title to a tract of land in Hot Spring County, Arkansas, and appellant claims the land by inheritance from his father, George W. Landreth, who died in the year 1896, while a resident of Hot Spring County. The land in controversy

was the homestead of George W. Landreth, and he left no other children. It was sold in the year 1901, under an order of the probate court of Hot Spring County, upon petition of appellant's guardian, appointed in the State of Missouri, and was purchased by appellee at the sale. The validity of the sale is the point at issue in the case.

Appellant's father and mother separated while he was an infant, or perhaps a few months before his birth, and they were divorced by a decree of the chancery court of Hot Spring County a few years later. Appellant's mother removed to another county in the State, and he resided with her until her death, when he was taken by one of his maternal grand-parents to the State of Missouri, and has continued to reside there throughout the period of his minority. Appellant's father continued to reside in Hot Spring County and occupied the land in controversy as his homestead until his death in 1896, and an administrator was appointed there to wind up his estate. There has been no guardianship of appellant in this State, but the public administrator in Pike County, Missouri, where appellant resided with his grand-parent, was ordered to take charge of the estate as guardian. The statutes of Missouri provide that "The public administrator shall be *ex-officio* public guardian and shall have charge of all estates of minors that may, by the order of the probate court be placed in his charge, and in such cases he shall be known and designated as public guardian." Section 464, Revised Statutes of Missouri, 1909. In the year 1901, the Missouri guardian made application to the probate court of Hot Spring County, pursuant to the statutes of this State authorizing sale of infant's land by a nonresident guardian, for an order of sale of the tract of land in controversy, and the probate court made such an order and the land was sold to appellee; the sale being subsequently reported to and confirmed by the probate court. This inquiry, therefore, constitutes a collateral attack upon the validity of the sale.

Our statute on the subject reads as follows: "When a nonresident minor owns real estate in this State, and

had a guardian in the State or Territory in which he re-sides, the court of probate in the proper county may authorize such guardian, either in person or by his agent acting under power of attorney, to sell such real estate and receive the proceeds of such sale. Provided, before any order shall be made for the payment of money to a nonresident guardian, or for the sale of the property of his ward by him, he shall produce satisfactory evidence to the court that he has given bond and security as guardian, in the State in which he and his ward reside, in at least double the amount of the sum to be paid to him, or in double the amount of the appraised value of the property to be sold; and the proof shall consist of a copy of the record, setting forth his appointment as guardian, and also a copy of his bond executed as such, duly authenticated." Section 3813, Kirby's Digest.

(1) The first question presented is whether or not the probate court of Missouri had jurisdiction to appoint a guardian for appellant. The act of April 8, 1891 (Kirby's Digest, 3793), provides that "all probate sales of real estate, made pursuant to proceedings not in substantial compliance with statutory provisions shall be voidable." It follows, as the necessary effect of that statute, that if the guardian in the State of Missouri was not legally appointed, or at least if the court there had no jurisdiction to appoint a guardian, the proceedings here for the sale of the land would not be in substantial compliance with statutory provision and would be void. Further discussion of the effect of that statute will be made a little later in this opinion, in deciding another phase of the case with respect to the validity of the sale.

(2) This court has announced and adhered to the rule which prevailed at common law that the last domicile of the deceased father of an infant constituted his legal domicile and so remained, and that the domicile of the infant can not be changed or removed by his own act until he reaches his majority.

The earliest case on that subject is *Grimmett* v. *Witherington*, 16 Ark. 377. That case involved the con-

flict between a guardian appointed here and one appointed in the State of Texas concerning the custody of property of the minor in this State, and the court in its decision upheld the authority of the domestic guardian, holding that the domicile of the father being in this State, the legal domicile of the infant followed it. That case was followed, and the rule re-announced in *Young* v. *Hiner,* 72 Ark. 299. In the opinion in that case, there is a suggestion of exceptions to the rule, and we find upon examination of the authorities that there are many exceptions recognized by the courts. The Supreme Court of California, in the case of In re *Vance,* 92 Cal. 195, decided that where the father abandoned his child under the age of fourteen years he could no longer claim the custody, and that the domicile of the child might be changed by the act of another person standing in *loco parentis.* The Supreme Court of the United States, in *Lamar, Executor* v. *Micou, Administratrix,* 114 U. S. 218, laid down the rule that an infant having a domicile in one State, who after the death of both parents takes up his residence at the home of a grand-parent and next of kin in another State, acquires a legal domicile there. This subject is fully discussed by Mr. Rodgers, in his work on Domestic Relations, § 656, *et seq.,* where the exceptions to the general rule are mentioned. There are, too, authorities to the effect that although the legal domicile be elsewhere, a residence in fact is sufficient to confer jurisdiction upon probate courts of such *de facto* residence of a minor to appoint a guardian. Tiffany on Domestic Relations, § 159.

(3)    There is not involved in this case any question of conflict of authority between a domestic guardian and one appointed in a foreign jurisdiction, and the question is solely whether the Missouri court had jurisdiction to appoint a guardian so that the courts of this State might in consequence thereof authorize a sale of land here to be made by such guardian. The judgment of the Missouri court in appointing the guardian there is at least presumptively decisive of the question of jurisdiction,

and we think, under the authorities cited, the court had, upon the facts shown in this case with respect to the legal domicile and residence, jurisdiction to make the appointment. There was no guardian in this State and the probate court here possessed the power to authorize the Missouri guardian to make the sale of the land in this State.

The only other point of attack made upon the sale, which we deem necessary to discuss, is that the order of sale was made without requiring the production of a copy of the bond of the guardian as required by the statute. It is undisputed that the guardian had given bond in the State where the appointment was made, and the record in the probate court shows that proof was made of that fact by certificate of the judge of the Missouri court. The statute of this State, however, provides that before any order of sale shall be made upon petition of a nonresident guardian, "he shall produce satisfactory evidence to the court that he has given bond and security as guardian, etc.," and that the proof shall consist of "a copy of his bond executed as such, duly authenticated." A certificate of the judge of the foreign court is certainly not a literal compliance with the statute, but whether or not it is a substantial compliance calls for discussion. The evidence adduced by appellant shows that so far as the records of the probate court reveal the proof that was made, when the order of sale was applied for, there was no copy of the bond presented. None is found on the files now, and the evidence justifies the conclusion, we think, that no copy was filed.

(4) It is insisted that notwithstanding the act of 1891, providing that probate sales shall be voidable unless made in substantial compliance with the statute, there is a conclusive presumption of the regularity of sales so far as relates to matters which preceded the judgment of the court ordering the sale, and that such judgment is conclusive of those matters. Many decisions of this court are cited which sustain that contention, but they all antedate the act of April 8, 1891, which wrought

an important change in the law on that subject. The Legislature intended to change that rule pursuant to the admonition of this court in the opinion of Judge SANDELS in the case of *Apel* v. *Kelsey,* 52 Ark. 341. If we were to hold that there is a conclusive presumption attending the judgment of the probate court, little effect would be given to the act of 1891. In order to give it any effect at all, we are forced to the conclusion that the Legislature meant to destroy the incontrovertible verity of the judgment of the court for the purpose of showing that the proceedings were not in fact in substantial compliance with the statutory provisions with respect to probate sales. That much is decided in the recent case of *Mobbs* v. *Millard,* 106 Ark. 563, where we held that notwithstanding the judgment of confirmation of a probate sale, it should be declared void on collateral attack where it is shown that the land was sold for less than the appraised value. Now, if we were going to give a conclusive presumption to the judgment of the probate court, we ought to have held in that case that the judgment of confirmation was conclusive of the fact that the land was sold for three-fourths of its appraised value. But we held to the contrary, and it necessarily follows from that decision that we construe the statute to allow the presumption arising from the judgment of the probate court, concerning compliance with statutory provisions, to be overcome by proof that those provisions were not in fact substantially complied with, and that upon such proof being made it defeats the validity of the sale. We are of the opinion, therefore, giving the proper effect to the act of 1891, the sale should be set aside if it is found that the statutory provisions were not substantially complied with.

(5) The further question then arises as to whether or not failure to produce evidence in the form provided by the statute, with respect to the bond given in the foreign jurisdiction, is a substantial departure from the statutory provisions so as to defeat the sale. The statute provides that an order of sale shall not be made unless satisfactory evidence be produced that the guar-

dian has given bond in the court where he was appointed, and we are clearly of the opinion that unless such bond has in fact been given the order of the sale will be void. But the form of the proof of the execution of that bond is quite another thing, and it does not follow that a departure from the method of proof amounts to a substantial departure from the statutory provisions. It is error for the probate court to make an order of sale without proof of the execution of the bond in the form prescribed by the statute. But, after all, this provision concerning the kind of proof to be introduced relates to form and not to substance, and it ought not, we think, to be regarded as substantially within the meaning of the act of 1891. In *Harper* v. *Smith*, 89 Ark. 284, we held the method of giving notice of sale was a mere irregularity and not a substantial departure from the requirements of the statute. A guardian's sale for less than three-fourths of the appraised value of the land is undoubtedly a substantial departure from the provisions of the statute, and we so held in *Mobbs* v. *Millard, supra.* Our conclusion is that the variance in the form of proof adduced before the probate court to obtain the order of sale was not a substantial departure from the statutory provision and does not void the sale ordered by the court and subsequently confirmed.

(6) This action originated in the circuit court of Hot Spring County and was, on motion of appellee, transferred to equity. It is insisted that the transfer was improper because the questions involved were those to be decided by a law court, and the court erred in ordering the transfer. The material facts are, however, undisputed, and since the decision of the chancellor is correct, and could not have been otherwise in a court of law, there was no prejudice in transferring the cause.

Decree affirmed.