MINETREE *v.* MINETREE.

Opinion delivered February 24, 1930.

*Jeff Bratton,* for appellant.

*C. M. Buck,* for appellee.

McHANEY, J. In April, 1906, Dr. James N. Minetree, then a resident of Manila, Chickasawba District, Mississippi County, Arkansas, attempted to adopt appellant, then bearing the name of Ollie McCain, an infant under two years of age, as his son and heir; the order of the

probate court of said county and district being as follows:

"ORDER FOR ADOPTION OF CHILD.

"Pursuant to requests of a certain petition made by Dr. James N. Minetree of Manila, Arkansas, and presented to the court on the 24th day of April, 1906, asking for the adoption of the infant son of Mr. and Mrs. Luther E. McCain, as his own and lawful heir, by showing in said petition that the mother of said child is dead and that the father thereof is a resident of Mississippi County, Arkansas, and that said child is possessed of no property whatever and by Luther E. McCain, father of said infant child appearing in open court on the 24th day of April, 1906, and giving his consent to this order of adoption, it is therefore ordered by me a judge of said probate court that said infant child be adopted agreeable to the terms of above said petition and that its name be Ollie McCain Minetree, and that the care and custody of said infant child be given to petitioner, James N. Minetree."

The petition mentioned in the order had been lost from the files and could not be introduced in evidence. Appellant was thereupon taken into the home of Dr. Minetree and appellee, who is his widow, with whom he thereafter continued to reside, and who treated him as a son, supported him, and attempted to educate him. Shortly after the above order of adoption was made, Dr. Minetree removed with his wife and appellant from thence to Dona Ana County, New Mexico, where they continued thereafter to reside, and where the appellee now resides. In June, 1923, Dr. Minetree died testate, his will having been executed in November, 1919, leaving all his property to his wife, the appellee. It was duly probated in New Mexico and placed of record in Mississippi County, Arkansas. Appellant's name was not mentioned in the will. He continued to live with the appellee, his adoptive mother, until the fall of 1928, when, believing himself entitled in law to the property of his adoptive

father, subject to the widow's right of dower, he demanded same, which was refused, and this suit followed. About 200 acres of land in Mississippi County are involved. The court found that the above order of adoption was and is void, and dismissed appellant's complaint for want of equity. Was the learned chancellor correct in so holding?

Sections 1 and 2 of the Act of February 25, 1885, No. 28, p. 32, now §§ 252 and 253, C. & M. Digest, provide that (1) "any person desirous of adopting any child may file his petition therefor in the probate court, in the county where such child resides"; and (2) "such petition shall specify, first, the name of such petitioner; second, the name of such child, its age, whether it has any property, and, if so, how much; third, whether such child has either father or mother living, and, if so, where they reside. Such petition shall be verified by the oath or affirmation of such petitioner."

The first case coming to this court after the adoption of the above statute was *Morris* v. *Dooley*, 59 Ark. 483, 28 S. W. 30, 31, 430. Neither the petition for, nor order of, adoption in that case showed the child to be a resident of the county (Phillips) at the time the petition was filed and the order made. The court said:

"The proceeding to adopt a child as an heir was unknown to the common law, and in this State exists only as a special statutory proceeding. Prior to the passage of the act of February 25, 1885, authorizing such proceedings (Acts 1885, p. 32), the probate courts possessed no such powers, and could exercise no such jurisdiction, as it conferred. The jurisdiction was conferred by a special statute. Mr. Black in his work on Judgments, says: 'It is well settled that a judgment in a summary proceeding must show upon its face everything that is necessary to sustain the jurisdiction of the court rendering it.' Section 280. The rule seems to be, especially in this State, as settled by this court in *Hindman* v. *O'Connor*, 54 Ark. 643, 16 S. W. 1052, 13 L. R. A. 490, that 'where the juris-

diction is conferred on a court by special statute, and which is to be exercised in a special and often summary manner, the judgment can only be supported by a record which shows jurisdiction, and no presumptions as to its jurisdiction will be indulged.' *Harvey* v. *Tyler,* 2 Wall. 328 (17 L. ed. 871) ; *Galpin* v. *Page,* 18 Wall. 371 (21 L. ed. 959) ; *Gibney* v. *Crawford,* 51 Ark. 35, 9 S. W. 309; *Hindman* v. *O'Connor,* 54 Ark. 643, 16 S. W. 1052, 13 L. R. A. 490; Black, Judgments 279; Freeman, Judgments 123; 12 Am. & Eng. Enc. Law, 276 *et seq.*

"But it is contended that only those facts which the statute requires to be set out in the petition need to be made to appear in the record; but we hold, on the contrary, that in a proceeding of this kind, under a special statute, and not according to the course of the common law, the court in which the proceeding is had *quoad hoc* must be considered as an inferior court, and that, unless all jurisdictional facts appear in the record itself, the judgment in the proceeding will be void upon collateral attack. In *Henning* v. *Planters' Ins. Co.* (C. C.) 28 F. 440, the court said: 'Nor can the want of such averment or showing be supplied by proof *aliunde* the record, offered at the trial of the subsequent suit, predicated on the alleged judgment. The defects of the record cannot be so pieced or patched up by parol.' 'Jurisdictional facts cannot rest in parol to be proved in one case, and perhaps disproved in another.' Judge Cooley, in *Montgomery* v. *Merrill,* 36 Mich. 97. There is nothing in *Railway Co.* v. *Lindsay,* 55 Ark. 281, 18 S. W. 59, that militates against this doctrine. There it is held that the judgment of the justice of the peace could be supported by parol, as on appeal to the circuit court the cause was to be tried *de novo;* and the statement filed in lieu of the complaint was amendable in the circuit court, as well as in the magistrate's court, and would be treated as amended to conform to the evidence, which had been heard without objection."

Mr. Justice RIDDICK wrote a very strong dissenting opinion in that case, which was concurred in by Mr. Chief Justice BUNN, but the majority opinion has been the law in this State since that time, and has been consistently followed by this court since. *Willis* v. *Bell,* 86 Ark. 473, 111 S. W. 808; *Avery* v. *Avery,* 160 Ark. 375, 255 S. W. 18; *O'Connor* v. *Patton,* 171 Ark. 626, 286 S. W. 822, 826. And, as further sustaining *Morris* v. *Dooley,* see *St. Louis, I. M. & S. R. Co.* v. *Dudgeon,* 64 Ark. 108, 40 S. W. 786; *Ward* v. *Magness,* 75 Ark. 12, 86 S. W. 822; *Reeves* v. *Conger,* 103 Ark. 446, 147 S. W. 438; *Beakley* v. *Ford,* 123 Ark. 383, 185 S. W. 796; *Hart* v. *Wimberly,* 173 Ark. 1083, 296 S. W. 39.

(1) Appellant concedes that such is the law in this State, but insists that, since, at the time of the order of adoption, he was an infant of tender years, and that the order shows his father to be a resident of Mississippi County, the fact of his residence is sufficiently shown on the face of the record, and that the order of adoption is valid. It will be noticed that the order does not state that the minor was at the time a resident of the Chickasawba District of Mississippi County. It does state ''that the mother of said child is dead and that the father thereof is a resident of Mississippi County, Arkansas.'' Assuming without deciding that the finding in the order that the mother is dead and that the father is a resident of the county is sufficient to establish the residence of the child in the county on the general rule that the residence of the father is that of his minor child, still it is not sufficient to show that the residence of either the father or the child was in the Chickasawba District of that county. By act No. 81, Acts 1901, p. 136, Mississippi County was divided into two judicial districts, and the jurisdiction of the circuit, chancery, and probate courts of each district was defined. In § 14 of said act, it is said: ''That all matters of probate jurisdiction pertaining to that part of Mississippi County within the Chickasawba District and to persons and property resident and being therein

shall be subject to the jurisdiction and examination of the probate court of Mississippi County for the *Osceola* District.'' The use of the word ''Osceola'' in this connection is clearly a clerical error in copying or printing, as the whole context shows that the word ''Chickasawba'' was intended. Otherwise it would be meaningless. As regards probate jurisdiction, the two districts are the same as separate counties. Therefore, even though it be assumed that the residence of the child is that of its father, the order of adoption is fatally defective in failing to affirmatively show on the face of the record that the father was at the time a resident of the Chickasawba District of Mississippi County, in the absence of a finding that the child was such a resident, because the jurisdiction of the court depended upon it.

Appellant next says that, even though the adoption order be held void, appellee is estopped from asserting its invalidity. We cannot agree with appellant, as we are of the opinion this court has held to the contrary in *Avery* v. *Avery, supra,* and inferentially at least in the other adoption cases above cited. Here, as we have already shown, the order is void on its face for lack of jurisdiction of the court. It is the same as if no order of adoption had ever been made. A valid will was made by Dr. Minetree, which omitted to name appellant therein. All his property was given to appellee, and no course of conduct on the part of either toward appellant could estop appellee from claiming the property as sole beneficiary against a stranger in blood who claims under a void order of adoption. As said in *O'Connor* v. *Patton, supra,* ''The right of inheritance as such is conferred in our State upon a stranger in blood only by pursuing the special statutory proceeding for adoption''; and we think the statute should be strictly construed as against the adopted child, ''because it is in derogation of the general law of inheritance, which is founded on natural relationship, and is a rule of succession according to nature which has prevailed from time immemorial.'' 1 Cyc. p. 932.

It is finally urged that there was an oral contract of adoption between the father of appellant and Dr. Minetree. Conceding this to be so, still appellant must fail. This exact point was decided against appellant in *O'Connor* v. *Patton, supra,* where we said: ''Conceding, without deciding, that an oral contract for the adoption of a child and to give the same rights as a natural child, may be enforced after the death of the foster parent, this doctrine could not avail Louis E. Patton under the pleadings and proof in this case, because A. H. Patton disposed of all the property of which he was possessed by will which was duly probated by judgment of the probate court. ' * * * The mere contract to adopt is not sufficient of itself to make the child a legal heir of the promisor, because the right to take as heir exists only by operation of law. The child takes in these cases by virtue of the contract and by way of damages or specific performance. An agreement to adopt does not prevent the person making the agreement from disposing by will of all his property to other persons than the child to be adopted; but an agreement, either express or implied, to give the adopted child a certain portion of the adoptive parent's property, will be enforced.' 1 C. J. p. 1377, § 21(b). Our statute providing that, where a person makes a will and omits to mention the name of a child, if living, etc., he shall be deemed to have died intestate, and the child whose name is omitted shall be entitled to a child's portion of the estate, refers to natural children, or legally adopted children. The right of inheritance as such is conferred in our State upon a stranger in blood only by pursuing the special statutory proceeding for adoption.''

Having examined all grounds urged for a reversal and not finding them well taken, the decree must be affirmed. It is so ordered.

SMITH, J., (dissenting). There are no subjects upon which the conscience of the courts should be more tender than those relating to the custody, support, and adoption of infants. The human soul is capable of no sentiment

more noble and unselfish than that of love for little children. With animals, the love of offspring is the instinct which preserves their species, and the human race would not survive without it. Certainly, humanity's progress towards civilization has been aided by this love, and the law here under review is a recognition of it, and, in my opinion, the law should not be whittled away by technical constructions. On the contrary, it should have the most liberal construction to effectuate its humanitarian and Christian purpose, and it is the general policy of the courts to so construe such statutes.

Indeed, as Mr. Justice RIDDICK points out in his dissenting opinion in the case of *Morris* v. *Dooley,* upon which case the majority rely, it has been doubted by some courts whether the heirs of an adult, who has procured an order adopting a child as his own, have any right to object that the prescribed procedure in procuring the order of adoption was not strictly followed.

It is not my purpose, however, to assault the opinion in the Dooley case. The dissenting opinion of Mr. Justice RIDDICK, in which Chief Justice BUNN concurred, does that to my satisfaction, but I do protest against its unnecessary extension, and, with due respect for the majority, I say that the doctrine of that case has been extended in the majority opinion.

The statute enumerates the recitals which the petition must contain, and the residence of the child is not one of these, yet the order in the Dooley case was held void for the *sole* reason that it did not recite that the child was a resident of the county in which the order of adoption was made. The order did recite that the parents of the child were dead, and there was therefore no presumption as to its place of residence, as the presumption which the law indulges that the residence of an infant is that of its parents could not be applied in that case, they being dead. But the order here held defective and void recites that the mother was dead, but that the father was a resident of Mississippi County and present in court, and

does not the recital that the only living parent was a resident of Mississippi County carry irresistibly the implication that this two-year-old infant was also a resident of that county?

In the chapter on "Domicile," 9 R. C. L., § 10, p. 547, it is said: "It is a general rule that an infant cannot of his own volition acquire a domicile. It is also a well-established rule that the domicile of every person at his birth is the domicile of the person on whom he is legally dependent, whether it is at the place of birth or elsewhere; and so the domicile of the father is in legal contemplation the domicile of his minor children. If the parents change their domicile, that of the minor necessarily follows it, though there is authority to the effect that in order to change the child's domicile the parents must act in good faith and with reference to the welfare of the child. The domicile of an infant, if legitimate, is that of the father, if living. On the death of the father, the domicile of a minor follows that of its mother during her widowhood; but the last domicile of an infant's deceased father fixes the legal residence of the infant in the absence of proof of the residence of the surviving mother. On the death of both parents the domicile last derived from the parents, or either of them, continues to be the domicile of the child until legally changed or until the child reaches his majority, when he has power to choose and acquire his own domicile." The following cases from this court sustain the text quoted: *Grimmett* v. *Witherington,* 16 Ark. 377, 63 Am. Dec. 66; *Johnston* v. *Turner,* 29 Ark. 280; *Young* v. *Hiner,* 72 Ark. 299, 79 S. W. 1062; *Landreth* v. *Henson,* 116 Ark. 361, 173 S. W. 427; *Johnson* v. *Taylor,* 140 Ark. 100, 215 S. W. 162; *Taylor* v. *Collins,* 172 Ark. 541, 289 S. W. 466.

The attorney who was employed by Mrs. Minetree to procure and prepare the order of adoption testified that in the preparation of the order of adoption he had the statute before him, and that he thought he had prepared an order in exact conformity with the statute, and I sub-

mit that it is only by a technical and strained construction of the statute that the contrary can be held.

Other courts have not construed their adoption statutes so technically, but have sustained such proceedings where there has been a substantial compliance with the statute, upon the theory that the proceeding was for the benefit of infants, who had no volition in the matter, and whose interests it was the duty of the courts to protect.

In ordinary proceedings of this kind, the child is not consulted, and it has no more control over the proceeding than it had over its own natural birth. Its destiny is in other hands. It is without volition. Surely, its future should not be trifled with, and the order of adoption fixes its future. The child loses its identity, its name; it becomes another person; it has another parent. Such a proceeding should not be declared void unless the letter of the law plainly demands.

In the case of *Milligan* v. *McLaughlin,* 94 Neb. 171, 142 N. W. 675, 46 L. R. A. (N. S.) 1134, it was held by the Supreme Court of Nebraska (to quote the headnote): "While, under the provisions of § 800 of the Code of Civil Procedure, a person desiring to adopt a child should file the petition for adoption in the county of his residence, and the county court of another county should refuse to receive and file the same, yet, the statute being enacted for the benefit of the child, in a case where the facts are that all the interested parties appeared before the county court of another county, and agreed on the one side to relinquish the child, and consented to its adoption on condition that it should have the full rights of heirship as if born in wedlock, and on the other to adopt and make it an heir, and the child is surrendered to the custody of, and remains in the family of, the adopting parent until the death of that parent, which occurred while the child was of tender years, the collateral heirs of the deceased adopting parent are estopped to deny the validity of the adoption proceedings and that the child is entitled to inherit."

That may be an extreme case, and it is certainly unnecessary to go to the same length to uphold the order of adoption here under review. The case does show, however, the disposition of courts to uphold such orders whenever it is possible to do so.

The case of *Kenning* v. *Reichel,* 148 Minn. 433, 182 N. W. 517, 518, 16 A. L. R. 1016, reviews many cases on the subject, and it was there said that "there need not be more than a substantial compliance with the requirements of the statute to sustain the validity of the proceeding;" and our case of *Coleman* v. *Coleman,* 81 Ark. 7, 98 S. W. 733, is one of the cases cited in support of that statement. In the annotator's note to this Kenning case, it is said: "Formerly, the courts were inclined to construe the adoption statutes strictly, since they were in derogation of the rights of the natural heirs at common law. No presumptions were indulged in favor of the jurisdiction of a court of limited powers, and, where the record failed to show a finding of fact required by the adoption statute, the defect was regarded as a jurisdictional one, available to the next of kin of the adoptive parent in a collateral proceeding. *Morris* v. *Dooley* (1894) 59 Ark. 483, 28 S. W. 30, 430; *Ferguson* v. *Jones* (1888) 17 Or. 204, 3 L. R. A. 620, 11 Am. St. Rep. 808, 20 p. 842. Compare *Coleman* v. *Coleman* (1906) 81 Ark. 7, 98 S. W. 733, the holding of which is given *infra.* * * * The courts, however, have abandoned the view that the adoption statutes are to be construed strictly, as in derogation of common-law rights, since they are obviously not intended to supplement the rules of common law, but to make a complete change in the law. Consequently mere errors and irregularities in the decree of adoption, or in other parts of the record of the proceeding, are no longer considered to be jurisdictional defects, and a decree of adoption cannot be successfully attacked by a presumptive heir in a collateral proceeding, except on the ground that the court was without jurisdiction to render the decree."

A large number of cases from many States are cited in support of the annotator's statement that adoption statutes are not to be strictly construed and that courts are abandoning the policy of so doing.

The opinion in the case of *Avery* v. *Avery*, 160 Ark. 375, 255 S. W. 18, would indicate that this court had come to that view, for it was there held (to quote a headnote) that, "where the record in adoption proceedings recites that the natural father of the child appeared in open court and petitioned for the child to be adopted by himself, and the mother, by affidavit filed in court, assented to the adoption, whereupon the order was made, a substantial compliance with Crawford & Moses' Digest, § 256, is shown." See, also *White* v. *Dotter*, 73 Ark. 130, 83 S. W. 1052.

The case of *Van Matre* v. *Sankey*, 148 Ill. 536, 36 N. E. 628, 23 L. R. A. 665, 39 Am. St. Rep. 196, which is itself a well-considered case, citing many authorities, is followed by an annotator's note, covering many pages, citing many cases to the effect that adoption proceedings should be liberally construed in favor of the adopted child. Indeed, many of the authorities, including the Van Matre case itself, are to the effect that "neither an adopting parent, nor his heirs or representatives after his death, can question the validity of the order of adoption of a minor child procured at his instance and with his consent."

The majority say they have not extended the Dooley case, but have only followed it; that the act dividing Mississippi County into two districts creates two probate courts, one for the Osceola District and the other for the Chickasawba District, and that these districts must be treated, for all probate court purposes, as separate counties, and that the adoption proceedings must therefore be had before the court having jurisdiction of the district of the county in which the child resides.

This reasoning, carried to its logical conclusion, would overrule the Dooley case. The whole theory of

that case is that an adoption order is not a judgment of a court of superior jurisdiction, but is a special statutory proceeding, and it is the jurisdiction of a *court* which the statute creating Mississippi County parcels out to the two districts thereof.

One of the landmark cases in our jurisprudence is that of *Borden* v. *State,* 11 Ark. 519, 44 Am. Dec. 217. After there laying down the rule, which has since been consistently followed, declaring the presumption of verity to be indulged in favor of the judgments and decrees of superior courts, the learned judge who wrote that opinion said: ''The remaining question before us in this case is whether or not the probate court is to be regarded as a superior court within the principles laid down. We answer emphatically that in our opinion it must be so considered. Because it is not only a court of record, but a constitutional court of fixed and permanent character invested with general jurisdiction and plenary powers over the matters committed by law to its peculiar cognizance and open to review by appeal. There is abundant authority thus to hold as to this court, and if there was not, it would be a matter of serious public concern. Because, while in point of law it is equal, in point of fact it is a more important court to the people of this State than the circuit court. And this will be manifest at once when it is considered that it only requires a period of about forty years to pass every atom of property in the State real and personal and many choses in action through the ordeal of the probate court; while it is estimated that the whole would not be passed through the circuit court in an entire century. We feel freely warranted therefore, not only on the score of authority, but for cogent reasons of public policy, to fix this court upon the footing of superior courts. (*McPherson* v. *Cunliff*) 11 Serg. & Rawle (Pa.) 429 (14 Am. Dec. 642); (*Kempe* v. *Kennedy*) 5 Cranch. 173 (3 L. ed. 70); (*Grignon* v. *Astor*) 2 How. 340 (11 L. ed. 283); (*Grant* v. *Raymond*) 6 Pet. 220 (8 L. ed. 376).''

124

If, therefore, an adoption order is a judgment to be rendered only by a court having jurisdiction as such of the territory apportioned to it, then it is the judgment of a superior court, for a probate court is a superior court, and its judgments are clothed with the presumption of regularity which renders them impervious to the collateral attack here made upon the judgment under review.

If, on the other hand, the order is merely a special proceeding had in the probate court, and the Dooley Case so holds, then the order contains all the recitals which the Dooley Case held were essential. The surviving parent was a resident of Mississippi County, and the adoption order so recites, and the statute, under the strictest construction, requires nothing more, and the Dooley Case required nothing more because the residence of the sole surviving parent is the residence of the child.

I am of the opinion, therefore, that the order of adoption here under review has been construed too strictly; that it is valid, and should be upheld.

I am authorized to say that Justices KIRBY and MEHAFFY concur in the views here expressed.