WILLIS *v.* BELL.

Opinion delivered June 8, 1908.

1. PARENT AND CHILD—WHEN MOTHER'S CUSTODY NOT DISTURBED.—A female child of tender years will not be taken from her mother's custody where, considering her age and sex and the character and environments of the mother, it appears to be best for her to remain with the mother, even though the evidence shows that the father is a man of good repute, that he is in good condition financially, and has a comfortable home shared by his mother, and that the child would be well cared for by him and properly reared. (Page 477.)

2. ADOPTION OF CHILD—NECESSITY OF PARENTS' CONSENT.—Under Kirby's Digest, providing that if a child sought to be adopted "have a father or mother living" such father or mother must appear in open court and give consent thereto, unless it be shown that the residence of such father or mother is unknown, *held,* that adoption proceedings are void which show that the child has two living parents, and that only one was present in court and consented to the adoption of the child by a third person, without showing that the residence of the other parent was unknown. (Page 478.)

3. PARENT AND CHILD—PROCEDURE AS TO CHILD'S CUSTODY.—Where a mother, in the father's absence, consented to the adoption of her

child by her brother, with whom she was living, and the adoption proceedings prove to be void, upon an application for habeas corpus by the father, addressed to the mother's brother, the case will be determined as if it were a contest between the father and mother. (Page 479.)

4. SAME—DIRECTIONS AS TO CHILD'S CUSTODY.—Where a child is left in her mother's care by the orders of the court, the mother will be directed not to change the child's name, nor to deny the father the privilege of seeing the child, nor to teach the child to forget the father. (Page 480.)

5.. SAME—CONCLUSIVENESS OF ORDER ADJUDGING CHILD'S CUSTODY.— Judgments awarding the custody of infant children are in their nature temporary, and apply only to the conditions then existing. (Page 480.)

Appeal from Pulaski Circuit Court, Second Division; *Edward W. Winfield,* Judge; affirmed.

STATEMENT BY THE COURT.

Appellant, N. P. Willis, filed his complaint in the chancery court of Pulaski County against appellee, H. B. Bell, to obtain the custody of his child, Mary Francis Laura Willis, who is alleged to be wrongfully in the custody of appellee. The chancellor issued a writ of *habeas corpus* requiring the production of the child, which writ was duly served, and appellee produced the child in response thereto.

On the day set for hearing of the cause, the chancellor was absent from the county, and by consent of both parties, who were present with counsel, the cause was transferred to the circuit court of Pulaski County, and issuance of another writ of *habeas corpus* was expressly waived by appellee, he consenting to appear and answer as if a new writ had been issued by the circuit judge.

The case was heard upon the pleadings, documentary evidence, depositions of witnesses and oral testimony, and a final judgment was rendered awarding the custody of the child *pro tempore* to the defendant (appellee), and plaintiff appealed. The judgment of the court is as follows: "And it is therefore ordered and adjudged and decreed that the custody of the minor child, Mary Francis Laura Willis, be and remain in the said Harry Bell *pro tempore;* that the said Harry B. Bell be not allowed to remove the said child during her minority from the

jurisdiction of this court, unless otherwise granted permission to do so from time to time; and that he be required to enter into a bond in the sum of five thousand dollars that he will faithfully abide the orders of this court, which bond must be filed with the clerk of this court within ten days from this date, and upon the approval of the said bond by the clerk of this court, this order shall thereupon become binding *pro tempore.*

"It is further ordered that the petitioner, N. P. Willis, be and he is hereby authorized and permitted to see the said minor child at the home of the said H. B. Bell in the city of Pine Bluff, Arkansas, at any and all reasonable times, but he shall not remove the said child from the custody of the said Bell; and for the purpose of executing this provision he, his agents, servants and employees are hereby enjoined and restrained from taking or attempting to take or causing to be taken the said child from the custody of the said H. B. Bell, unless permitted to do so by the orders of this court.

"It is further ordered that the said petitioner, N. P. Willis, shall be permitted to write to the said child at all reasonable times, and that the said Bell shall answer such communications with reasonable promptness, giving the said Willis correct information as to the whereabouts and condition of said child.

"It is further ordered that the petitioner, N. P. Willis, pay all cost of this proceeding."

*Davis & Pace,* for appellant; *Charles Jacobson,* of counsel.

1. The principle of *res judicata* applies to a decision as to the custody of a child on *habeas corpus* while the state of facts *remained* the same. 99 Mo. 484; 6 L. R. An. 672; 12 S. W. 798; 105 Mich. 61; 55 Am. St. 435; 62 N. W. 1009; 37 Minn. 260; 37 N. W. 334; 25 Wend. 64; 35 Am. Dec. 635; 96 Ind. 6; 37 La. Ann. 133. When *different conditions* prevail, another court may take up the question and make a different order where the welfare of the child requires, even though no material change of circumstances be shown. 37 La. Ann. 133; 67 L. R. An. 783. See our statute: Kirby's Digest, § § 1342 to 1345, etc.

2. The adoption proceeding is a nullity as to Willis. 11 Am. St. 808; 62 Am. St. 17.

3. The father by law has the paramount custody and control of minor children. Hoff. Ch. 499; 27 Barb. 14; 8 How.

Pr. 288; 5 L. R. A. 781; 112 Ind. 183; 103 *Id.* 569.; 104 *Id.* 227; 43 Iowa, 653; 6 Me. 462; 16 N. J. L. 419. The welfare of the child is the paramount issue; and where father and mother have separated, it is the duty of the court to confine the custody of the child to that parent best suited to maintain, protect and educate it, and bring it up in moral courses. 12 R. I. 462; 34 Am. St. 694; 44 Ala. 670. The only inquiry and true test is, is the father a suitable person to take care of the child? Hurd on Habeas Corpus (2 Ed.), 550; 32 Oh. St. 305; 82 Va. 433; 21 N. J. Eq. 384; 35 Hun, 334; 61 Iowa, 199; 59 Ga. 555.; 10 Allen, 270; 26 Kans. 650; 23 Ill. App. 196; 75 Ala. 409; 37 Ark. 27; 19 Wisc. 274.

4. The father is deprived of the custody only (1) where he is incompetent or improper person, and (2) where the enforcement of the rule would obviously destroy the happiness and well-being of the child. 76 Me. 565; 103 Ind. 569; 26 Kans. 650; 53 Am. St. 545; 68 Ala. 299; 56 Miss. 408; 3 Mason, 482; 48 *Id.* 349; 6 L. R. A. 672; 51 *Id.* 839; 20 Am. Dec. 324; 9 W. Va. 611; 88 N. C. 31; 1 Halst. Ch. 454; 40 N. H. 272, 280-1; 44 N. H. 321; 37 Ark. 29; 32 *Id.* 92; 50 Ark. 92; *Ib.* 351; 78 *Id.* 197; 82 Ark. 461.

*Austin & Danaher,* for appellee.

1. The matter is *res judicata,* and the judgment binds all parties and privies. 23 Cyc. 1253, 1319.

2. No abuse of discretion or error in judgment is shown, and this court will not interfere.

3. Humanity, respect for parental affection and regard for the infant's best interests are the three guides for the courts. 50 Ark. 351; 37 *Id.* 29; 78 *Id.* 198.

McCULLOCH, J., (after stating the above facts). This is a controversy concerning the custody of appellant's child, who is now a few months over five years of age. Appellee is a brother of the child's mother, appellant's divorced wife.

Appellant and his wife, Hattie Bell, the mother of this child, intermarried at Indianapolis, Indiana, April 25, 1900, and lived together, except during several short periods of separation, until the month of August, 1904, when the wife left her husband, and went to Hayti, Missouri, taking the child with her.

The child was born to these parents on March 5, 1903, and was therefore about a year and a half old when the final separation of the parents occurred. Appellant went to Hayti a short time afterwards, and took the child back to Indianapolis, the mother following or accompanying him. After they reached Indianapolis, Mrs. Willis instituted *habeas corpus* proceedings in the circuit court of that (Marion) county to obtain custody of the child. The circuit court awarded custody to her, and on appeal to the Supreme Court of Indiana the decree was affirmed. *Willis* v. *Willis,* 165 Ind. 325. Six or eight months later Mrs. Willis came to Arkansas, bringing the child with her, and took up her residence with appellee, her brother, and has resided with him up to the date of trial of this case below, except while she was out of the State for a time. On October 1, 1906, appellant obtained in the court at Indianapolis a decree for divorce from his wife on the grounds of desertion, no disposition being made in the decree concerning the custody of the child. On March 20, 1907, the probate court of Jefferson County, Arkansas, upon petition of appellee and upon the consent of Mrs. Willis, made and entered an order for the adoption of said child by appellee. The petition and order recites the fact that appellee had been divorced from his wife, that he was a resident of Indianapolis, Indiana, and that the custody of the child had been awarded to its mother by a court of competent jurisdiction in the State of Indiana. The present proceedings were commenced by appellant in April, 1907, to obtain custody of the child.

If this case was one directly between appellant and his former wife, it would, under the proof, present little difficulty here. We would, without hesitation, affirm a decree continuing the custody of the child, *pro tempore,* with its mother. Considering the present age of the child and her sex, the character and environments of the mother as shown by the evidence, we would deem it best not to take the child from her now. This view is prompted by a proper concern for the interest of the child, and does not leave out of consideration the rights and feelings of the father. We do not mean to intimate that we conclude from the testimony in the case that he is not a fit person to have the custody of his child, or that his home and surroundings would not afford suitable asylum for it. On the con-

trary, we think the evidence establishes the fact that he is a man of good repute, that he is in good condition financially, and has a comfortable home shared by his mother, and that the child would be well cared for there and properly reared. But for the present, at least, what she needs most is a mother's care and attention.

As we have said, therefore, the case would not be difficult of solution if the controversy was directly between the two parents. But such is not the state of the case. The mother has, by her own act in consenting to the order of adoption by her brother, done all she could to legally disestablish her parental relation toward her child. It has been given the name of another, and is being taught to forget her father. If the attempted act of adoption be legal and binding, it has completely changed the name and legal status of the child.

An important and controlling question is therefore presented as to the legal effect of the attempted adoption. Was it valid for any purpose?

The statutes of this State impower the probate court of the county where a child resides to make an order for its adoption by another person, but they are expressly prohibited from doing so if the child has "a father or mother living unless such father or mother appear in open court and give consent thereto, provided that, if such petitioner show by two competent witnesses that the residence of such father or mother be unknown, then such court may order the adoption of such child." Kirby's Digest, § 1345. The jurisdiction of the court depends upon the express consent of the parents of the child unless their residence be shown to be unknown. *Furgeson* v. *Jones,* 17 Oregon, 204. This evidently means that the consent of both living parents be given. Surely it was not intended that the legal status of a child can be changed upon the consent of only one of two living parents, and it goes without saying that the order is not binding upon the non-consenting parent. The record of the adoption proceedings shows affirmatively that the father was living at the time, and does not show that his place of residence was unknown.

There must be substantial compliance, in all their essential requirements, with statutes authorizing the adoption of children

in order to effect an adoption thereunder. *Morris* v. *Dooley*, 59 Ark. 483; 1 Cyc. p. 919. And an order of adoption not made in conformity with the statute is absolutely void. It cannot be valid in part or void in part. It is either valid or void in its entirety, and any one interested can take advantage of its invalidity. *Morris* v. *Dooley*, *supra*.

The statutes of some States provide that where a parent has been deprived of the custody of his child in divorce proceedings, his consent to the adoption is not necessary; but our statute contains no such provision.

We are therefore of the opinion that the order of adoption is void and of no effect.

The evidence in the case shows that the mother did not intend, by consenting to the adoption of the child by her brother, to actually release her custody of it. She intended, so the evidence shows, merely to provide another protector for the child and to give her brother, who is able to cope with her former husband in his effort to take the child away from her either by legal process, or, as she feared, by force, the legal right to prevent him from doing so. She lived with her brother, the appellee, and expected never to part with her child. He promised to give her and her child a permanent home and to provide for them both. Whether the order of adoption be treated as valid, as she deemed it to be, or void as it is in fact, it was not intended to alter the relationship between her and her child, or to release her right to remain with it and give it her maternal care. The child was thereafter to be in the joint custody of herself and her brother as its adopted parent. This was not the legal effect of the adoption if it had been valid, but such was the actual effect to be given it, as established by the evidence.

The case should then be determined as if it was a contest with the mother, for if the court by its process takes the child from appellee the effect is to take it from the mother. This we do not feel at liberty to do, under the facts established by the evidence. The fact that appellee and his wife have manifested a willingness and proved their fitness to undertake the care and maintenance of the child in conjunction with its mother adds but another reason why a change of custody should not be made at this time. Instead of having only its mother's care and

society, the child enjoys a place of refuge in the home of appellant and his wife, who appear to be both willing and able to give all that the mother may prove unable to supply—a home, food, raiment and facilities for its education.

As we have already shown, appellee and Mrs. Willis undertook to change the name of the child. That would have been one of the legal effects of the order of adoption if it had been valid. But there is also evidence of a settled purpose on the part of appellee, not only to change the child's name in fact, but to deny appellant the privilege of seeing it and to teach it to forget him, thus ignoring entirely his natural rights. This was wrong. That course was doubtless due to the belief that the order of adoption was valid, and that all of appellant's natural rights were thereby cut off, but now, since the proceeding is declared to be void, if the conduct is persisted in, it will afford grounds for changing the custody of the child. Appellant, though deprived of the custody of his child, has rights which must be respected. Notwithstanding the fact that he no longer has the child in his keeping, there rests upon him certain duties towards it in contributing to its support and education, but there also rest upon those having the child in their care reciprocal duties to the father, among which is that of not taking his name from the child nor of denying him the privilege of seeing her at all reasonable times, nor of teaching her to forget him.

The judgment and orders of the learned circuit judge are, we think, fair and just to appellant, and fully protect any right and privilege he is shown at present to be entitled to.

Judgments and decrees awarding the custody of infant children are in their nature temporary, and apply only to the facts and conditions then existent. They do not necessarily affect further proceedings under changed conditions. If, therefore, appellant should hereafter desire to institute further proceedings in a court of competent jurisdiction under changed conditions to regain the custody of the child, the chancery court of the county where the child and its mother reside being the most appropriate forum for that purpose, there is nothing in the judgment in this case to prevent him from so doing.

Finding no error in the judgment of the circuit court, the same is affirmed.