GRANT, J.
The plaintiff, both in error and below, was in the lifetime of Mary S. Bradford and at her death, a collateral relative of the latter, to wit: a cousin-german. In default of descendants in the direct line, upon her decease he would have been her heir at law, upon whom, if she had died intestate, her estate would have been settled by devolution to him.
Mary S. Bradford at her death left a paper in due form of her last will and testament, and purporting to be such, and which as her last will has been duly admitted to probate and proved in the court to which the jurisdiction for that purpose appertained. The defendant, Edward Bushnell, was named by the will as its executor and also as trustee to carry out certain of its provisions; he has duly qualified in both capacities and has entered upon the duties thus cast upon him. The defendant, Ella Bradford Brown, is a legatee and devisee under the will. *643 The plaintiff is not a beneficiary under the will, nor is he named in it.
This action, in origin, was to contest the will and have it declared void and inoperative in the disposition of any of the estate that was of Mary S. Bradford, deceased. All proper parties were made defendants.
A motion was made in the court below to abate the action and dismiss the petition, on the ground that the defendant Ella Bradford Brown is the only child and sole heir at law of the testatrix, so that, even if the contention of the plaintiff were to prevail, all the property involved in the suit would pass to her under the statutes of descent of Ohio; reduced to its lowest terms, the contention of the motion was to the effect that in no event could the plaintiff be said to be a party in interest in the case.
The plaintiff controverted, as matter of fact, the heirship of Ella Bradford Brown to the testatrix. This decisive question of fact, determinative of the right of the plaintiff to sue, and hence of the case, was heard below. The finding was that the facts upon which the motion depended were made out and it was sustained. As this disposed of the entire controversy, final judgment dismissing the petition was entered.
To reverse that judgment this proceeding in error is prosecuted here.
From the foregoing recital it will be seen that the sole question presented by this record is whether the defendant Ella Bradford Brown was the child, and is the sole heir at law of Mary S. Bradford, the testatrix. It is not claimed that she was the born child of the decedent, but she relies for her heirship on an adoption duly made, whereby the status of daughter to the testatrix was created as matter of law, so that upon the death of the adopting parent, and no will intervening, the succession of the property of the latter would pass to her by operation of statute.
To rebut this claim and defeat the devolution of the estate, in case the contest of the will should prevail, upon the claimed heir by adoption, the adoption itself is attacked as being null and of no effect in law.
*644 The purported adoption arose and became effectual, if at all, by virtue of a judgment in due form of the probate court of Cuyahoga county, Ohio, entered on August 13, 1866, the record of which appears here.
The claim is that this judgment is void for want of jurisdiction to render it, so that it may properly be called in question in this action, although it still remains unreversed of record.
As the question is important, although not difficult, as we regard it, we feel justified in exhibiting fully the facts upon which the case proceeds and our own conclusion must depend.
The statute of Ohio in respect of adoption, in force at the time the one controverted here purported to be had, was as follows: — S. and C., 506.
“Any inhabitant of this state not married, or any husband or wife, jointly, may petition the probate court of their proper county for leave to adopt a minor child, not theirs by birth, and for a change of the name of such child, but written consent must be given to such adoption by the child if the age of fourteen years, and by each of his or her living parents who is not hopelessly insane or intemperate, ’ ’ etc.
The petition upon which the judgment and order of adoption was finally entered, omitting the caption, was as follows:
“William Bradford and Mary S. Bradford, wife of said William Bradford, respectfully represent and state to your honor, that they are desirous of adopting as their child, Ella Scranton, who is a minor of the age of eight years, and the child by birth of Abel Scranton, the father of said child, and who resides at Brighton, in the county of Lorain, and state of Ohio, has given his written consent to such adoption of said child by your petitioners, and to such change of her name as aforesaid; that your petitioners are of sufficient ability to bring up and educate said child properly.”
This was signed by both petitioners.
The only answer in the matter was in the following language :
“I, Abel Scranton, the father of the above mentioned child, Ella Scranton, who is a minor child of the age of eight years, do hereby consent to the adoption of said child by William Bradford and Mary S. Bradford his wife, and to the change of *645 her name from Ella Scranton, her present name, to Ella Scranton Bradford, according to the prayer of the foregoing petition.
(Signed) Abel W. Scranton.
Cleveland, March 8,1866.”
Thereupon an entry, constituting the final judgment said to be void, was made in the journal of the probate court, as follows :
“This day came William Bradford and Mary S. Bradford, and moved the court for the adoption of Ella Scranton, aged eight year's and thereupon this cause came on to be heard upon the petition of William and Mary S. Bradford and the answer of Abel Scranton, the father of said minor child, and the court find upon examination of said Abel Scranton, that he of his own free will and accord desires the adoption of said minor child. And the court is satisfied from the testimony that the petitioners are of capacity and ability to bring up and educate said minor in a suitable and proper manner, having reference to the degree and condition of said child’s parent; and the court is further satisfied of the fitness and propriety of said adoption. The court do therefore order, adjudge and decree that from and after this date, the said minor child, to all legal intents and purposes, shall be the child of said petitioners, and that the name of said child be changed from Ella Scranton to Ella S. Bradford. ’ ’
It will be seen that the record does not affirmatively show that the consent of the natural mother of the child, if she was then living and not insane, was ever given to the adoption.
The claim of the plaintiff that the judgment of adoption was void ab mitio, is set forth in his brief, as follows:
“Now the portion that must appear in the petition or in writing underscored herein can not and does not relate to anything other than to give to the court jurisdiction upon the filing of the petition when the facts are set forth therein that the written consent has been or is given to such adoption by the child, and by such of his or her living parents, who is not hopelessly insane, etc. * * *
'“There is no allegation in the petition or request that the child by birth was the child of Abel Scranton, and the child’s mother, Mrs. Scranton. There is no allegation in the petition or request setting forth even the color of an excuse for not having the written consent of such adoption of the child’s mother.
*646 "Now the language of the statute is clear, certain and definite that there must be a written consent by each of his or her living parents (in the plural) who are not hopelessly insane, etc. Now this being true, jurisdiction never attached at all in the court where the petition omits the essential and necessary allegation to give jurisdiction. The fact that Abel Scranton, the father of the child, gave his written consent to the adoption of the child, by your petitioners, in no way clothes the court with jurisdiction, because he is' only one of the parents and the statutes expressly provides that both shall consent.
"Further, there is not one word in either the application or the journal entry, that any notice of any hind or character, summons or otherwise, was ever given to the child’s mother, nor did she in any way ever appear in court to be heard as to the disposition of her child. Now, if this is true, and it is, what jurisdiction did the probate court in 1866 receive or was clothed to give and do what the record of that court says and sets forth was done.
"Where the child to be adopted is under the age of fourteen years, the appearance in court, and the consent of the child’s parents brings the child before the court by the acts of its parents, and the court then and then only acquires jurisdiction over the child, and the parents of the child in this case Abel Scranton, the child’s father, and Mrs. Scranton, the child’s mother.
"It further appears by the record that Abel Scranton, the father of the child Ella Scranton, a minor child of the age of eight years, did by his answer consent to the adoption of said child by William Bradford and Mary S. Bradford, and to the change of her name from Ella Scranton, her present name to Ella S. Bradford. There is no _ answer of the mother of Ella Scranton, there is no consent of the mother of Ella Scranton; she never was notified and never was heard in court in this proceeding, which was adverse to the child, as well as the parents of the child Ella Scranton.”
Let us examine this extreme claim that the judgment is void in the light of principle.
It is first to be observed that the adoption proceeding is in no just sense adversary in character, although it can not be said to be in rem, strictly speaking; it is quasi in rem, or, as the old books would say, soundmg i/n rem.
So far as the here wanting natural mother is concerned, the proceeding, if valid, divested her of no property right, or any *647 right except that of filial obedience and duty on the part of the child, and that right, as the law stood in 1866, before the legal emancipation of married women in Ohio, was a shadowy right, having little or no substance as long as the wife was under the overpowering paramountcy of the husband and the disabilities of coverture at common law. The question of what obligation of duty the proceeding cast upon the adopting parties is not material here, as they were in no default in the steps taken in the direction of jurisdiction. The chief person in concernment was the child, and the advantage accruing to her from the proceeding, if it is not avoided here, turns out to have been considerable, and in return for which she, so far as appears, yielded the full consideration of service, duty and obedience, through many years, to her adopters, and of which the plaintiff by this suit seeks to deprive her — he purporting to be in law the successor in right to the adopting parents who received the service. This measures the merit of his contention, carried to its result as to her.
Jurisdiction, shortly stated, is the power to hear and determine. As to the subject of it, it must either reside inherently in the court which undertakes to exercise it, or it must be created by law. There is no doubt that constitutionally it may in Ohio be conferred by statute upon the probate court, as it has been conferred by the legislature in the act mentioned. There was, therefore, the power to hear.
In that statute' it is particularly to be noticed there is an entire absence of what the petition must contain as the first and only step towards the exercise of that jurisdiction which the act has conferred; it must ask for the adoption of a minor child not the proposed adopter’s by birth. The simple asking is enough to set the machinery of the jurisdiction created by law in motion in the direction of granting the prayer.
All things else are matters to be supplied, either at the motion of some one who wants more in the petition or by the evidence produced.
While the contention of the brief is that the petition must contain much more in order to invoke the jurisdiction of the *648 court to find effect, we do not find any such requirement, in the light of the enabling statute.
In Ruling Case Law, p. 603-4, it is said:
“It has been ruled that the petition for the adoption of a child must be liberally construed; that facts not averred in it may be supplied by caption: that the facts disclosed need not be other than expressly required by the statute; and that, even as to conditions precedent necessary. to support the adoption, such conditions need not be set forth in the petition unless the statute so requires.”
This consideration appears to us to much impair, if not to destroy the value of the authorities cited in the brief from states other than Ohio, — we not having their correlative statutes to inspect and guide us.
As to jurisdiction of the parties, the constitutional requirement is due process of law; which is made up of notice and an opportunity to be heard, before rights can be judicially defeated or interests cut off. But this condition precedent to the exercise of jurisdiction can be predicated only of adversary proceedings, and for the benefit and protection of an adversary party in matter of substance and not of form only.
We have now reached a point in this discussion where it may be asked whether, the filing of a petition being enough to set the wheels of jurisdiction in motion, the other steps necessary to complete the operation of the statute make effectual its declared purpose and advance the remedy it gives, may not be supplied by allowable legal intendment, or inference, or presumption, favoring jurisdiction, under the rule quoted, as against the attack made on the jurisdiction in this case, a mode of attack which, since we find the petition jurisdietionally sufficient, we must regard as collateral and not direct. We may meet and answer this inquiry, as we think, without determining whether the fact that the natural mother of the child is not named as affirmatively consenting to the adoption and does not appear as having notice of the proceeding, in the absence of the muniments of presumption, would be decisive of the case or not.
Before; however, proceeding to consider in the light of authority, the question of how far a presumption has arisen here *649 which will protect the judgment assailed at the bar against this mode of assault, we desire to view the matter from another point of view, from which we may as we think, also reach a satisfactory conclusion.
The one who makes the attack must be looked at, as would be the case if Mrs. Bradford were here trying to defeat a right of Ella Brown, accruing to the latter as the result and consideration of a contract, her part of which has faithfully been performing for more than a half century. Would Mrs. Bradford be heard to put forward the infirmity that Ella’s mother is not by record shown to have joined in an answer in adoption, although the natural mother may have been unable to so join because she was then dead, after she, Mrs. Bradford, had received all that the law required the child to give in return for the right to inherit, which Mrs. Bradford vicariously through the plaintiff, is attempting to do? What standing would she have — and therefore what standing does he have in a court of conscience? We think this material inquiry is answered in Chehak v. Battles, 133 Ia. 107 [110 N. W. 330; 8 L. R. A. (N. S.) 1130; 12 Ann. Cas. 140].
By the Iowa statute in force at the time, the adoption was required to be evidenced by a deed duly executed, acknowledged and recorded. In that case the deed was signed, but the signatures were not acknowledged, nor was the instrument ever recorded. The child lived for years with the adopting parents and fully performed the obligations cast upon her by the deed of adoption, although of course she was in person no party to it.
After their death advantage was attempted to be taken of the infirmity mentioned, to defeat her right of inheritance under it. We can see no difference in substance or principle between that case and this case.
The syllabus is as follows:
‘1 An instrument whereby, in consideration of the surrender to them of a child, parties accept the duties of parents to the child, and agree that it shall have all the rights of inheritance by law, may be specifically enforced as a contract as to the right of the child to receive a share of the estate, though it is invalid as an instrument of adoption because not acknowledged and recorded as required by the laws in force at the time of its execution.”
*650 Another holding in the case was that the instrument was not within the statute of frauds and could not be avoided as being in the nature of a testamentary disposition of property.
But the case at bar was not argued, as we recollect, from this point of view, and we shall not let our disposition of it rest on this consideration alone; although we might safely do so, as we think.
Its other aspect, the one in which the cause has been mainly argued, concerns the nature of the attack on the jurisdiction of the probate court of Cuyahoga county, whether the attack is collateral or direct.
We have seen that the court had jurisdiction of the subject by creation of law, and that its exercise was invoked and set in operation by the filing of a petition sufficient under the statute. Jurisdiction, therefore, attached by the taking of that step towards it. This conclusion denies, necessarily, the contention that there was no jurisdiction. It seems to follow that the present action attacks that jurisdiction collaterally instead of directly. Whether the jurisdiction was exercised effectually or not, is another question.
The only instance we have found in the books which seems to countenance such a proceeding as we have here in the light .of a direct attack on the judgment in adoption, is Willis v. Bell, 86 Ark. 473 [111 S. W. 808].
But the proceeding there was habeas corpus, and the writ was allowed because the mother had not been notified in the adoption case and she sued to get possesion of her child; it was not a suit to defeat the inheritable quality which the adoption judgment created if jurisdiction was present effectually, by any showing known to the law.
Camp’s Estate In re, 131 Cal. 469 [63 Pac. 736; 82 Am. St. 371], it is remarked:
“It is a well settled rule of law that where the jurisdiction of an inferior or special tribunal, or its power to act in any particular case, depends upon the existence of a fact which is to be established before it by extrinsic evidence, the determination of that fact by the tribunal can not be questioned in a collateral attack on its order. ’ ’
*651 Wells, Jur., See. 61, and cases cited.
In Richards v. Matteson, 8 So. Dak. 77 [65 N. W. 428], it is said — p. 80:—
“If silent as to jurisdictional facts, the order of adoption relied upon, having been made by a court of record, clothed with original jurisdiction of the subject-matter, its authority and jurisdiction will be presumed, unless by necessary implication from the recitals of the order it appears that something essential to the jurisdiction had been omitted, or that the required statutory conditions did not exist!”
Let us apply the test thus propounded to this case. The order of adoption was made-by a court of record having jurisdiction of the subject-matter. What is left to give rise to the presumption which will validate the order? From the recitals of the order does it appear “by necessary implication” that any remaining thing “essential to the jurisdiction” has been omitted or that “the statutory conditions” to the adoption did not exist . when the order was made ?
.If it is said that the consent of the mother is wanting, the answer is that such consent is not in all cases an essential to jurisdiction, or a statutory condition which must under all circumstances be present in order to make the judgment of adoption effectual. If the mother was at the time dead; if,she was then hopelessly insane; if she had then abandoned her child — in none of these contingencies was her consent indispensable, or requisite, or possible. The provision of the statute for a representative to act for the incapable parent, in any case, may be presumed to have been complied with, so long as the order does not show “by" necessary implication” that it has not been complied with — the court having original jurisdiction of the subject-matter, — according to the case last cited. We are of the opinion that, favoring a judgment, such presumption is to be indulged here — no recital of the order asserting or implying anything to the contrary.
We are, however, relieved, as we think, from all uncertainty of conclusion in accordance with the rule,we have thus endeavored to extract from the authorities, from a consideration of another ease, which apparently is exactly in point and which seems *652 to us to resolve even a lingering doubt. It is the ease of Wilson v. Otis, 71 N. H. 483 [53 Atl. 439; 93 Am. St. 564], It was an appeal from a judgment in distribution in the probate court. The brothers and sisters of the intestate claimed the entire estate as his heirs at law. One who claimed to be a son by legal adoption contested their right to inherit on the ground that he was the sole heir. The legality of the adoption proceeding was challenged and passed upon by the court.
The petition for adoption was filed in 1882 and was in the usual form, except that the father consented — as he did — and that his wife was then divorced from him, without a reservation in the judgment of divorce of the custody of the child.
An order of adoption was made, but was not entered on the journal of the court, and both it and the petition and the files in the case were taken to a lawyer’s office where they remained undiscovered for fifteen years, when they were lookd up, the adopting father, with whom the child had been living, being then dead and doubts as to the heirship being then cast upon the reputed son. The entire order of adoption, which was then brought out and put to record, was in the following language:
State op New Hampshire.
Strafford, ss. At a court of probate held at Rochester in said county of the seventeenth day of January, A. D. 1882: On the petition of George W. Otis and Addie F. Otis, both of Farmington in said county, praying for leave to adopt as their own child Arthur H. Edgerly, of Wolfeborough, in our county of Carroll, the child of William A. Edgerly and Sarah F. Edgerly, and that a decree to that effect may be made, it appearing to the court that said Arthur H. Edgerly is the child of said William A. Edgerly and Sarah F. Edgerly and is under fourteen years of age, and that said -- the parents of said child, having consented in writing to such adoption, and the court being satisfied of the identity and relations of the persons, and that the petitioners are of sufficient ability to bring up said child, and furnish suitable nurture and education, having reference to the degree and condition of its parents, and that it is fit and proper that such adoption should take effect:
It is therefore decreed that the said -have leave to adopt said child as h — , own child, and that the name of said child be changed to-and it is hereby ordered, that from the date hereof, said child shall, to all legal intents and pur *653 poses, be tbe child of the said -and shall hereafter have the name of-.
J. D. Young, Judge of Probate.
We call attention to the blanks appearing in this judgment, which lack the quality of affirmatively showing a consent by either parent or by any. one.
But every phase present in the case at bar important in this consideration, was dealt with and passed upon by the court in the opinion, which proceeds as follows:
‘ ‘ The question raised by the case is' whether the defendants are entitled to inherit a part of the estate; and this depends upon the question whether Arthur was legally adopted by the deceased. If he was legally adopted, it is conceded that he would inherit the estate subject to the widow’s rights and to the exclusion of the defendants. G. L., c. 188, s. 4. Their contention is that there was no valid judgment or decree of adoption by the probate court, in which the deceased entered a petition for that purpose. It is found as a fact, that upon that petition the judge of probate did judicially what the imperfect document signed by him, upon a reasonable construction thereof, shows he did. If upon competent evidence it appears that the court, having jurisdiction of the subject-matter, determined the issue or point presented by the petition, the parties are concluded thereby. Whether the judgment was actually entered up in the technical form of a decree, is not material in this collateral proceeding. Nihan v. Knight, 56 N. H. 167.
“Did the court grant the prayer of the petition? It appears from the record that the court, presumably upon competent evidence, found certain facts which were essential to a decree of adoption. G. L., c., 188, s. 3. These facts are expressly recited in the signed document, which, taken in connection' with the petition, indicate with much force that the judge understood that he had decided the question of adoption, and that nothing remained to be done except to enter up a formal decree. The signing of the blank form of a decree of adoption as a part of the record would be inconsistent with a judgment denying the prayer of the petition, and would not indicate that the court was in doubt as to what the final order should be. Nor is it reasonable to infer that the judge did not attach any importance to this document— that he regarded it as a waste piece of paper. Having some significance, it must be deemed to indicate the judge’s finding upon the petition in favor of adoption. As he had made specific findings of fact relating to the merits of the action and signed a *654 blank decree, the work of filling up the blanks was merely clerical, requiring the exercise of no judicial function. If he had entered a minute on the docket to the effect that ‘the petition is granted;’ that would have been conclusive evidence, in a collateral proceeding, of the judicial act of rendering judgment in accordance with the prayer of the petition. State v. Narcarm, 69 N. H. 237 [45 Atl. 744]; State v. Cox, 69 N. H. 246 [41 Atl. 862]; Matthews v. Houghton, 11 Me. 377; Felter v. Mulliner, 2 Johns. (N. Y.) 181; Fish v. Emerson, 44 N. Y. 376, 378, Swain v. Gilder, 61 Miss. 667, 671; Overall v. Pero, 7 Mich. 315; Lynch v. Kelly, 41 Cal. 232, 233; but such evidence would be no more convincing than the evidence furnished by the record in this case. Upon a reasonable construction of the record, the fact that a judgment of adoption was rendered is not susceptible of serious doubt. Freem Judg. (4th ed.), s. 45; McDonald v. Frost, 99 Mo. 44, 48 [12 S. W. 363].
“The fact that the petition with the blank decree at some time after the hearing was taken from the files or from the possession of the judge, and was not returned for some years, did not have the effect of invalidating the previous action of the court. The record, having been restored, is as competent and conclusive evidence of the judgment as though it had remained on the files.
“But it is insisted’ that the judge of probate had no jurisdiction to decide the question presented, or to render a judgment thereon, because it does not affirmatively appear in the record that the mother of the boy consented in writing to the adoption as required by the statute. G. L., c. 188, s. 2. This fact, however, is not necessarily essential to the exercise of jurisdiction by the probate court. If the parent has abandoned the child for three years, his consent to adoption proceedings is rendered unnecessary by the statute. G. L., c. 188, Section 2. It is for the court, after having acquired jurisdiction by the filing of an appropriate petition, to decide in the first instance whether the parent has consented to a decree of adoption; if not, whether there is any valid excuse for his non-action, as death, insanity, or other disability; or whether he has so far abandoned his parental duties for three years as to render his consent unnecessary. These, with other preliminary questions that might be suggested, must be determined upon evidence and a hearing by the judge, after he has acquired jurisdiction of the general subject-matter of the petition. The filing of the petition and the appearance of proper parties gave him, under the statute (G. L., c. 189, Section 4), power to act judicially. Horne v. Rochester, *655 62 N. H. 347, 348, 349; Spaulding v. Groton, 68 N. H. 77, 78 [44 Atl. 88], The court was not asked to do what it has no judicial power to do under any circumstances. It became its duty to act upon the subject-matter presented, and to receive evidence upon all material questions suggested, among others upon the question of abandonment as an excuse for the failure of the mother to consent to a decree of adoption. State v. Arlin, 27 N. H. 116, 129. If its decision was erroneous upon this question, the error did not render the proceedings absolutely void (State v. Richmond, 26 N. H. 232; White v. Landaff, 35 N. H. 128, 130), so that they might be disregarded in a collateral suit. The error if there was one, was correetible by appellate procedure, and does not prove a want of jurisdiction in the probate court. Fowler v. Brooks, 64 N. H. 423, 424 [13 Atl. 417; 10 Am. St. 425]; Kimball v. Fisk, 39 N. H. 110 [75 Am. Dec. 213].
“Nor does the absence in the petition of an allegation of abandonment, or of the mother’s consent, effect the question of general jurisdiction. It is not necessary that the petition should contain a full statement of all facts essential to a decree. It might seriously fail in this respect, or be demurrable, and still state a case calling for and requiring the exercise of the judicial power of the court. The test has been said to be, not whether it states a perfect case, but whether the court has the power to grant the relief sought in a proper case. Van Fleet Col. At., Section 61. If upon a petition for adoption which omits these allegations the court finds the fact of abandonment, as well as other necessary facts, its decree of adoption is valid. The judgment or decree necessarily implies a finding of all material facts not inconsistent with the record, one of which may be the fact of abandonment. In this case, as the finding of that fact is not inconsistent with other facts' disclosed by the case or the record, it is included in the general finding in favor of adoption, and furnishes a valid excuse for the non-consent of the mother. Erwin v. Lowry, 48 U. S. (7 How.) 172 [12 L. Ed. 655]; Florentine v. Barton, 69 U. S. (2 Wall.) 210, 216 [17 L. Ed. 783]; Thornton v. Baker, 15 R. I. 553 [10 Atl. 617; 2 Am. St. 925], The judgment of adoption, therefore, is not impeachable in this proceeding.”
We have quoted thus extensively from the New Hampshire case, partly because it appears to us to leave no important question involved in this case unanswered, and in part because before finding it we had really, in a manner, anticipated some of its discussed doctrines as to the consequences flowing from a statutory *656 grant of jurisdiction of the subject of adoption when it is once set in motion by a prayerful petition invoking its exercise clear through to the end..
The law of the case, as declared by the syllabus, appears to us to meet and dispose of every contention urged upon our attention in the case at bar.
The syllabus reads thus:
“A decree of adoption is not invalid because it does not recite nor the petition allege, an assent by the parents or facts excusing their assent.
“Where a petition asks for relief which the court has power to grant, and a decree is made, it will be presumed, in collateral proceeding, that all incidental questions were duly considered.”
Applying this law to the matter in hand, and how stands this case?
Our decree of adoption does not recite, nor does the petition allege, an assent to the adoption by both parents, and no facts are put forward to account for the want of consent. The judgment operating an adoption in law is not, for that reason, invalid.
The petition asked for relief which the court had power to give. A decree granting it was made. Without more, the law presumes, in a collateral proceeding, that all things necessary to reach the end sought have been done upon due consideration by the court clothed with the power to advance the remedy and grant the relief sought.
We know of no authority — can think of none — that more concretely squares with the case under review here.
Its conclusions, justifying ours, do not commend themselves the less to a court because in each case the attempt to defeat a consummated and earned adoption and its benefits, was made by one who sought, by a supposed fortuitous slip in the law’s meshes to reap where he had not sowed and to gather where another had strown.
We find no error in the judgment complained of, and that it does substantial justice. It is affirmed.
Dunlap and Washburn, JJ., concur.