EDWARDS *v.* MARTIN.

5-2275                                     341 S. W. 2d 51

Opinion delivered December 9, 1960.

*Paul K. Roberts,* for appellant.

*L. B. Smead,* for appellee.

JIM JOHNSON, Associate Justice. This is a child custody case. It is a contest between the mother, Mrs. Graydon Edwards, appellant, and the grandmother, Mrs. Larkin Martin, appellee, over the custody of a minor child, Richard James Foord. This is the second appearance of this matter before this Court. The first appeal came to this Court from an order of the Ouachita County Probate Court granting custody of the child to the grandmother, appellee herein. On appeal, this Court in *Edwards* v. *Martin*, 231 Ark. 528, 331 S. W. 2d 97, held that probate courts are without power or authority to determine a contest over the care and custody of a minor and ordered the cause remanded with directions to transfer the case to the Chancery Court for further proceedings. The mandate of this Court was followed and a different judge in the same district presided. Rather than retry the entire case before the Chancery Court, the parties chose to stipulate that the record and evidence adduced at the trial of the case before the Probate Court be submitted to the Chancery Court as a base for its decision and opinion. The custody of the child was again awarded to the grandmother, Mrs. Larkin Martin. From such order comes this appeal.

For reversal, appellant relies only upon the contention that: "The Court erred in failing to grant custody of Richard James Foord to appellant."

The record reveals that appellant and her child were severely injured in an automobile accident October 22, 1952, in which her husband was killed. After considerable hospitalization appellant and her child went to the home of her parents, appellees here. Appellant bought a home in 1953 for her parents, using a large part of the insurance proceeds from her husband's death. Appellee retained physical custody of the child and this was the situation when appellant remarried. The child's aunt, Ruby Mae Foord, was appointed his guardian in March of 1956, but this appointment was set aside because of failure to comply with the necessary statutory requisites of notice. On October 23, 1958, Mrs. Larkin Martin petitioned for

custody of the child. Appellant resisted this petition, hence the controversy here.

The evidence is undisputed that appellee from the time the child was eight months old in 1952, until the date of trial, November 28, 1958, cared for, loved, protected, and reared the child in a good Christian home; that she carried him to church and Sunday School; that he is being reared in a proper environment and is happy and healthy and knows no other home than that of appellees. On the other hand, the record reflects that appellant, from the time of her accident until some fifteen or sixteen months before the filing of the present action, lived a life which, to say the least, was not conducive to that of a worthy mother. It would serve no useful purpose to here review the testimony against appellant other than to say it was established that appellant suffered from a disease, drunkenness, and spells of depression. She attempted suicide a number of times and left home with a truck driver and was away over a year before she married him.

To appellant's credit, however, it is uncontradicted that since her marriage to Graydon Edwards in 1957 and for more than a year prior to this trial, appellant has conducted herself in an exemplary manner, both as a wife and as a stepmother to her present husband's children. The testimony as to appellant's present conduct shows a remarkable change for the good.

From these facts we must agree with the following excerpts from the learned Chancellor's opinion, who also had only the cold written record before him:

"This is a case which presents a great responsibility on the Court. It arises out of a multitude of most unfortunate circumstances. It involves, the future welfare of a small boy whom fate has deprived of the care, love and protection of his own father, who was killed in an automobile accident when the child was about eight (8) months of age."

As we review the Chancellor's findings and the record before us, certainly the child's welfare is paramount

in our minds. It is obvious that the Chancellor chose the course that it is better to be safe than sorry. He must have concluded that the mother's exemplary conduct immediately preceding the trial was not of *sufficient duration* to show any *permanent improvement* in her character since, as the testimony reflected, there was much to overcome. It is well settled, of course, that in a child custody case the present conditions are those on which the decree will rest. *Willis* v. *Bell,* 86 Ark. 473, 111 S. W. 808. Therefore, if other circumstances remain the same, we conclude that a continued course of conduct of the sort here established to have existed within one year preceding this trial would show such a *permanent change* in appellant's character as would obviously merit favorable consideration of a reinstituted custody petition by the mother.

Affirmed.